NEW-YORK,
Nov. 1810.

JACKSON, *ex dem.* CAMPBELL and READE, *against*
HOLLOWAY.

JACKSON
v.
HOLLOWAY.

THIS was an action of ejectment. The cause was tried at the *Duchess* circuit, in *August*, 1809, before Mr. Justice *Spencer.* A verdict was taken for the plaintiff, subject to the opinion of the court, on the following case:

The plaintiff gave in evidence, a lease, duly executed and acknowledged, for 187 acres of land, in the town of *Pawlins*, including the premises in question, dated the 26th of *April*, 1806, from *John Reade*, and *Catharine*, his wife, one of the lessors of the plaintiff, to *Archibald Campbell*, the other lessor, for the lives of *Justus Holloway*, the defendant, *William Holloway*, his brother, *Ransom Holloway*, (son of *William Holloway*,) and *William H. Howard*, son of *Richard Howard.* The rent reserved, was 13 bushels of wheat, and two hens, payable the 1st of *April*, at some convenient place, to be appointed within 40 miles of the premises.

It appeared, that *Justus Holloway*, the defendant, is, and had been for some time past, in possession of a part of a lot of land, described in the lease, claiming to hold under the *Reades*, and had often admitted that the right of soil belonged to Mrs. *Reade*, one of the lessors, and that *John Reade* her husband, had a mere life-estate. He applied to *Campbell* to sign a deed, confirming his title; that when *Campbell* complained to Mr. *Reade*, of paying rent for the whole lot, Mr. *Reade* sent a letter to *Justus Holloway*, directing him to deliver up the possession to *Campbell*, which letter was delivered to *Holloway.* At the time of executing the lease, in 1806, the persons mentioned therein were, and now are, in full life. It appeared also, that when this lease was executed, *Campbell* delivered up to Mr. *Reade* an old lease of the same premises, from Mr. *Reade* to *William Holloway*, and which,

A. being seised of land, in right of his wife, executed a lease to B. for life, in 1796, which was assigned to C. In 1806, A. and his wife executed a lease to D. for the same land, for the same lives, and with the same covenants. A. died in 1808, and the wife, after the death of her husband, in 1809, received rent of C.

It was held, that the wife, having joined with her husband, in executing the lease, in 1806, which was duly acknowledged according to the statute, she put it out of her power to affirm the lease given by her husband, in 1796, and that D. could not be prejudiced by her acts.

It seems, that where the wife is not a party to a lease, it is *void*, as to her; and an acceptance of rent, or any act of the wife, after the death of her husband, will not confirm it.

by assignment, had come to the possession of *Campbell*, and under which the lot had been previously held. Mr. *Reade* died the 28th of *October*, 1808.

The defendant then gave in evidence the lease from Mr. *Reade* to *William Holloway*, duly executed, dated the 11th of *February*, 1796, for the same lives, reserving the same rent, containing the same covenants, and conforming, in all respects, to the lease above mentioned as having been given up by *Campbell* to Mr. *Reade*, in 1806.

The death of *William Holloway* was proved; and that by his last will and testament, he appointed *Joseph Holloway* and *John Holloway*, his executors, and authorized them, in case of a deficiency of his personal estate, to sell as much of his real estate, as would be sufficient to pay his debts.

The defendant also produced an assignment from the executors of *William Holloway*, which was witnessed by *Campbell*, one of the lessors, dated the 28th of *March*, 1803, by which the executors bargained, demised, and quitclaimed to the defendant, the north half of the lot, being the premises in question, possessed by the defendant, who was to pay half the rent. There was also an endorsement on the lease, under the hands and seals of the executors, and witnessed by *Campbell*, dated the 28th of *March*, 1803, certifying that the executors had released to the defendant, the one half of the lease, to wit, the north half of the lot, he paying half the rents.

The defendant also gave in evidence an assignment, endorsed on the lease, from *Joseph Holloway*, surviving executor of *William Holloway*, to *Archibald Campbell*, dated the 26th of *April*, 1806, by which he assigned and transferred all their right and title, &c. subject to the rents, conditions, and reservations contained in the lease.

After the death of *John Reade*, in the month of *January*, 1809, the defendant paid to Mrs. *Reade* the rent

due on the old lease, for one half of the lot, possessed by the defendant, from *May*, 1808, to *May*, 1809, being seven bushels of wheat and two fowls, for which receipts were given.

NEW-YORK,
Nov. 1810.

JACKSON
v.
HOLLOWAY.

Receipts were also produced, dated the 30th of *March*, 1806, and the 14th of *January*, 1807, to *Archibald Campbell*, from *John Reade*, " in full, for rent due on the farm, formerly leased to *William Holloway*, but now leased to the said *Archibald Campbell*."

*J. Tallmadge*, for the plaintiff. *Bacon*, in his *Abridgment*,\* lays it down, " that if a husband, seised of lands in right of his wife, make a lease thereof, reserving rent, this is a good lease for the whole term, unless the wife, by some act, after the husband's death, shows her dissent thereto; for if she accepts rent, which becomes due after his death, the lease is thereby become absolute and unavoidable."

<div style="float:right">* 4 *Bac. Abr.*
13. tit. *Leases*,
(C. 1.) *Bro. Accept.* 10. *Leases*,
24. *Cro.Jac.* 332.
*Co Litt.* 45. b.
*Plowd.* 137. 2
*Anders.* 42.</div>

But it will be found, that the authorities cited by *Bacon*, do not bear out his position. In *Bro.* (*Acceptance*, 10,†) the counsel, *arguendo*, say, that if a lease is made by the husband and *wife*, of the wife's lands, reserving rent, and the wife accepts the rent, after the death of her husband, she makes the lease good. In *Bro.* (*Leases*, 24.) it is said, directly contrary to the position of *Bacon*, that if a husband seised in right of his wife, leases her lands, and dies within the term, the lease is void by his death. It is true, that in *Plowden*, 137. the counsel, *arguendo*, say, that if a man makes a lease for years, of his wife's land and die, the lease is not void, before entry made by the wife, but voidable only; and it is so decided in *Cro. Jac.* 332.‡ But in *Bro. Cui in vita*, 1. *Accept.* 1. it is said, that if a lease be made by the husband only, and he dies, and his wife accepts rent, such acceptance does not bind her, for she was not privy to the deed.§ There is a difference between a lease by the husband and wife, and a lease by the husband only. *Coke*¶ says, that a man,

<div style="float:right">† *Y. B.* 21 *Hen.*
VII. 38.

‡ See 4 *Vin. Abr.*
101. *Baron &*
*Feme*,(Z) 10, 11.

§ See *Wotton* v.
*Hele*, 2 *Saund.*
180. note 9.

¶ *Co. Litt.* 45.
and 351. a.
*Finch's Law*,31.</div>

NEW-YORK,  seised in right of his wife, together with his wife, may
Nov. 1810.  make leases, by indenture, for 21 years, agreeable to the
JACKSON     statute of 32 *Hen.* VIII. which were voidable at the
v.          common law.
HOLLOWAY.

Mrs. *Reade* never joined in the lease to *William Hol-loway ;* and no act of hers, after the death of her husband, will make it good. The lease was void on the death of

* *Cruise's Dig.* her husband, and incapable of being confirmed.*
tit. *Deed*, c. 7.
s. 58—66.

*J. Emott*, contra. A husband acquires, by marriage, a

† *Co. Litt.* 325. freehold in his wife's lands.† The lease of Mr. *Reade*
b. note 2. being by deed, did not determine by his death; but was voidable only by the entry of the widow. The title *Leases*, in *Bacon's Abridgment*, it is well known, was written by Baron *Gilbert*, and the text'has been always held to be good law.

Whether the wife join in the lease or not, makes no difference. Before the statute of 32 *Hen.* VIII. the act of the wife in joining in the lease, was a perfect nullity. She could alienate only by a fine or common recovery. The cases, therefore, which have been cited to show a mistake in *Gilbert*, or *Bacon*, grounded on the distinction between a lease by the husband and wife, and by the husband alone, are inapplicable.

The lease continued valid until avoided by the entry of Mrs. *Reade*, after the death of her husband. She has made no entry, nor done any act to avoid it; but on the contrary, by her acceptance of rent, she has confirmed it, and made it unavoidable.

The new lease did not destroy the interest created by the old lease. During her coverture, the wife could do no act disaffirming the old lease; nor could she convey or transfer her right or power to disaffirm. The new lease would operate only when the old lease had ceased or determined. If, by her act, the wife put it out of her

‡ 4 *Bac. Abr.* power to disaffirm, the old lease became unavoidable.‡
16. *Gold.* 13, 14. The old lease was produced at the trial, and must be

considered as still in existence, and in full force. A surrender binds only the parties; it does not affect any interest a stranger had in the estate before the surrender.*

NEW-YORK,
Nov. 1810.

JACKSON
v.
HOLLOWAY.

* Co. Litt. 338.

THOMPSON, J. delivered the opinion of the court. The defendant claims title to the premises, under a lease from *John Reade* to *William Holloway*, dated in the year 1796. *John Reade*, however, had only a life-estate; the fee being in his wife, *Catharine*, who is one of the lessors. The other lessor, *Campbell*, claims title under a lease from *John Reade* and *Catharine*, his wife, dated in the year 1806, *duly acknowledged* by them. *John Reade* has since died, and his widow has accepted rent from the defendants.

If we are to examine and decide this case upon the score of *English* authority, as the counsel seem to have argued it, the question before us would be, whether the acceptance of rent, by Mrs. *Reade*, was an affirmance of the old lease from her husband; and how far the acceptance of rent would affect her interest, would depend on the question whether, as to her, the lease from her husband was void, or only voidable? This is a point which seems not to be altogether settled in the *English* books. In *Bacon's Abridgment*, (tit. *Leases*, (C.) p. 13.) it is laid down, as a doctrine clearly agreed to, that if a husband seised of lands, in right of his wife, make a lease thereof by indenture, or deed-poll, reserving rent, that this is a good lease for the whole term, unless the wife, by some act after the husband's death, shows her dissent thereto; for if she accepts rent that becomes due after his death, the lease thereby becomes absolute and unavoidable; and that if the wife join in such lease for years, if not made pursuant to the statute of 32 *Hen.* VIII. c. 28. she is, after her husband's death, at liberty either to affirm it, by acceptance of rent, or to dissent to and avoid it, in the same manner as if she had been

NEW-YORK, no party thereto. The authorities, however, referred
Nov. 1810. to, do not seem fully to support the positions there laid
JACKSON down. Serjeant *Williams*, in his note to 2 *Saund*. 180.
v. (11. 9.) has collected most of the cases on the subject.
HOLLOWAY. And from many of the old authorities, it appears, that
if the lease was made by the husband alone, and the wife,
after his death, accepted rent, the acceptance would not
bind her; but if she had joined in the lease, and then
accepted rent, after the death of her husband, she would
have been bound by it. And whether the lease was for
life or years did not vary the principle, but only changed
the remedy.

From the cases there referred to, it is justly observed,
that the law is not so clearly agreed, as it is said to be,
in the passage cited from *Bacon's Abridgment*. And
was it necessary here to decide the question, I should
incline to the opinion, that where the wife is not a party,
to the lease, it is void, as to her, and, of course, not
affirmed by the acceptance of rent. The weight of au-
thority appears to me to be on this side of the question.
And it is most conformable to the general rules of law,
applicable to the rights of *femes covert*. It would seem
a little incongruous, to speak of a deed as *voidable* by a
person who was not a party, or privy to it, nor had any
agency in its execution. The very term, implies some
agency in the act which is to be avoided. But it is un-
necessary to give any definitive opinion on this point.

In *England*, by the statute of 32 *Hen*. VIII. (c. 28.)
leases of the estates of *femes covert* are valid if made in
the name of the husband and wife, and she seals the
same, and the rent is reserved to the husband and his
wife, and the heirs of the wife, according to her estate
of inheritance. In other cases, the interest of a *feme
covert*, in real estate is devested only by fine and recovery.
We have not adopted the statute of *Hen*. VIII. But it is
not necessary, with us, to have recourse to fine and reco-
very, in order to pass the estate of a *feme covert*. She

may, during her coverture, part with the whole, or any portion of her interest, in real estate, if the deed be acknowledged, in the mode prescribed by the statute, concerning the proof of deeds. (1 *Rev. Laws*, 478.) The words of this act are general, extending to any estate of the *feme covert*. Mrs. *Reade* having, with her husband, executed and duly acknowledged the lease to *Campbell*, in 1806, did thereby put it out of her power to affirm the lease given by her husband, in 1796, to *William Holloway*. *Campbell's* rights, during the continuance of his lease, could not be prejudiced by her acts. This ground is, of itself, sufficient to entitle the plaintiff to recover.

<div style="text-align:center">Judgment for the plaintiff.</div>