# Warren *v.* Wagner.

*Action on Promissory Note.*

1. *Married woman relieved of disabilities of coverture; capacity to make lease of lands.*—A married woman who has been relieved of the disabilities of coverture under the statute (Code, 1876, § 2731), has the capacity, in conjunction with her husband, to make a valid lease of lands belonging to her, as her statutory estate, for a term of years.

2. *Same; when may sue alone for rent of lands.*—Where a married woman who has been relieved of the disabilities of coverture under the statute (Code, 1876, § 2731), executed, in conjunction with her husband, a lease of lands belonging to her as her statutory separate estate, for a term of years, and, by the terms of the lease, the rent was made payable to her, she may sue alone for the recovery of the rent.

3. *Admissibility of evidence.*—When evidence is offered as a whole, parts of which are inadmissible, the primary court may, without error, exclude the whole.

4. *Lease; when lessee not bound to repair or rebuild.*—An express stipulation in a lease, binding the lessee to surrender the premises, at the expiration of the term, "in as good order and condition as the same now are, reasonable use and wear and tear excepted," is merely the expression of an obligation which the law would imply in its absence, and does not impose upon the lessee a liability to repair or to restore, in the event of a destruction of the premises, or a material part thereof, during the term, by fire, or other unavoidable accident.

5. *Motion to exclude illegal evidence; when may be made.*—A motion for the exclusion of evidence, which is not merely secondary, but in itself illegal or irrelevant, may be entertained at any stage of the cause prior to the retirement of the jury.

6. *Liability of lessee for rent in event of destruction of premises; exception to general rule.*—A lessee of premises destroyed during the term by unavoidable accident is not excused from the performance of an express provision or covenant to pay rent for the term, unless he has protected himself by an express stipulation for the cessation of rent in that event, or the landlord has covenanted to repair or rebuild; but there is an exception to this general rule, that the destruction must not be of the entire subject-matter of the lease, leaving nothing capable of holding and enjoyment by the lessee.

7. *Same.*—Where the lease is of lands and tenements, with the right of quarrying stone during the term, a destruction of a limekiln located on the lands does not excuse the lessee from payment of the rent for the balance of the term, although the use of the kiln may have been the principal consideration moving the lessee to enter into the lease, and from it he may have expected to have derived his principal profits.

8. *Eviction of tenant; what constitutes, and what are its effects.*—The eviction of a tenant consists in the disturbance of his possession, his expulsion or amotion, by title paramount, or by the entry and act of the landlord, depriving him of the enjoyment of the demised premises, or a

VOL. LXXV.

[Warren v. Wagner.]

portion thereof, and operating, partially or wholly, a bar to the right of the landlord to demand rent falling due in the future.

9. *Same; mere trespass by landlord does not amount to.*—A mere trespass by the landlord upon the demised premises, not intended by him as a permanent amotion or expulsion of the tenant, or to deprive him of the possession and enjoyment of the premises, may entitle the tenant to damages, but does not amount to an eviction.

10. *Same; when partial and when entire; effect on rents due in future.* If the landlord, by himself, or by the act of another, which he authorized, or to which he assents, enters upon, and takes possession of a material portion of the demised premises, the entry and possession constitute, at the election of the tenant, an eviction from the whole, authorizing an abandonment of the lease, and absolving the tenant from the payment of rent falling due in the future, or a partial eviction only, discharging the rent *pro tanto.* Nothing, however, less than an entire abandonment or surrender will operate a dissolution of the tenancy, and a suspension or discharge of the whole rent.

11. *Same; refusal to restore no element of eviction.*—When the landlord enters upon, and takes possession of the demised premises, there is no duty resting upon the tenant to demand of the landlord restoration, and, of consequence, there can be no necessity for a refusal to restore, as an element of eviction.

12. *Same; proof of consent or authority of the wife, when effected by husband.*—When the act of the husband is relied on as an eviction of the wife's tenant, his agency, or her assent to his act may be proved by circumstantial evidence, and may be inferred from his employment in the transaction of her business, her acquiescence in his former acts in reference to the leasing of the premises, their relationship, and the nature and character of the act imputed to him; the inference, however in such case, is one of fact, to be drawn by the jury, and not one of law.

APPEAL from Shelby Circuit Court.

Tried before Hon. S. H. SPROTT.

This was an action by Mrs. Mary B. Wagner against B. B. Warren, on two promissory notes, each for $80, dated 13th April, 1878, and payable to the plaintiff's order, one on 1st December, 1880, and the other on 1st January, 1881; and was commenced on 28th January, 1881. The defendant filed six pleas. The averments of the first plea are, in substance, that the plaintiff is, and was on 29th August, 1877, a married woman, the wife of Charles G. Wagner; that at the date last named she was, by the chancellor's decree, duly relieved of the disabilities of coverture to the extent, and in the manner authorized by the statute; that on 13th April, 1878, the plaintiff, her husband and the defendant executed a lease, a copy of which is exhibited with the plea; and that the notes sued on were, with others, given for the rent of the property embraced in the lease. As shown by the lease, the demised premises consisted of a certain " piece, parcel, or lot of land," in Shelby county, in this State, " together with the limekiln and mill-house attached, and all and every building whatever, to the said lot of land in any wise appertaining and belonging, including the six cabins now used and occupied by the workmen,"

[Warren v. Wagner.]

and certain machinery, tools, etc.; and also the right to quarry rock and to cut and use timber for the purpose of making lime at the kiln. The lease was for the term of three years, and the rent was payable to the plaintiff in monthly installments of eighty dollars each, evidenced by defendant's promissory notes. The other provisions of the lease material to this report are stated in the opinion. The defenses set up in the other pleas may be briefly stated as follows: (2) Want of consideration; (3) Failure of consideration; (4) *Non-assumpsit;* (5) That the defendant was induced to execute the lease by false representa-. tions touching his liability in the event any of the property was destroyed by fire, without fault on his part, made by plaintiff's husband, who acted as her agent in the matter, and who was a lawyer in whom the defendant had a " peculiar trust and confidence;". and (6) Defendant's eviction from the premises ' by plaintiff, she acting by and through her husband and agent. ' To the first plea the plaintiff demurred, and her demurrer was ] sustained. The cause was then tried on issues joined on the other pleas, the trial resulting in a verdict and judgment for the plaintiff.

On the trial the plaintiff introduced the notes sued on in evidence, and rested his case. Thereupon, the defendant read in evidence the lease exhibited with his first plea, and introduced proof showing that the limekiln and machinery described in the lease were destroyed by fire in June, 1880; that the consideration of the notes sued on was rent under the lease for months subsequent to the fire; and that Charles G. Wagner, plaintiff's husband, drafted the lease, and acted for, and represented her in the negotiations for it, and in procuring its execution by the defendant. The defendant was examined as a witness in his own behalf, and his testimony, which is set out at length in the bill of exceptions, may be summarized as folfolows: The negotiations for the lease were had with the plaintiff's husband, who was a lawyer by profession, friendly to the defendant, and in whom he had confidence, etc. In the spring of 1878, when he first spoke to the said Charles G. Wagner about renting the property, the latter told him that he could rent it, unless one T. G. Holt, with whom he was then negotiating for a lease of the property, should take it. A few days afterwards, the said Wagner sent for defendant, and told him he would not rent to Holt, and that defendant could have the place on the same terms on which it had been offered to Holt; and that he had prepared a lease for Holt with great care and trouble, which he would read to defendant. He then read the lease to defendant, and when, in reading, he came to the clause (set out in the opinion) providing that the property should be returned at the end of the term in as good condition

[Warren v. Wagner.]

as it then was, with the exception of the ordinary wear and tear, he remarked that Holt had objected to this clause on the ground that the property might be destroyed by fire, or other cause, and that he, Holt, would be held responsible; and, in this connection, he also said to defendant that " if the property was destroyed, there would be an end to the whole matter, unless done through the negligence of the tenant;" and that he had satisfied Holt on this point, but that they disagreed as to other matters. Defendant, relying on the construction and explanations of the lease made to him by the said Wagner, executed the lease; but, before doing so, he carried it home, and read it over carefully, and had a talk with Holt about it. The defendant further testified that he would not have signed the lease and the notes, if it had not been for said construction and explanations of it; that he complied with the terms of the lease, and paid the rent promptly, until the fire, including the installment which matured in June, 1880 ; that shortly after the fire he, having heard that said Wagner intended to try to make him responsible for the rent and the property destroyed by the fire, made a written tender to him of all the property not destroyed by the fire, and afterwards failed and refused to pay the rent accruing under the lease; that he did not use the houses on the premises after he discovered the extent of the destruction of the limekiln property by the fire, except a stable and buggy shed, which he used occasionally for a few months after the fire ; that " the fire utterly destroyed the entire value of the property as limekiln property, the only use for which it was valuable, or for which it was rented, but left the stables, crib and a good many houses that were used for the hands at the limekiln, on the premises uninjured." The evidence introduced on behalf of the defendant further tended to show that the fire was not caused by his negligence or fault; that a short time after the fire the said Charles G. Wagner "caused a colored woman, the cook of said Wagner and family, to be put in one of the houses included in the lease, and ordinarily used by the employees at the limekiln ;" and that a few days after the fire the said Wagner also caused to be removed from the leased premises a few designated articles of personal property, included in the lease, to his dwelling.

T. G. Holt was examined as a witness on behalf of the defendant, and he testified that the lease in evidence was " the same, in substance, as the draft of a lease which had been offered for his acceptance by said Wagner some few days or weeks before the date of the lease ;" and that a few days after witness had refused to rent, and before the defendant had signed the lease, he had a conversation with defendant in reference to it. " Thereupon the defendant offered to prove by

said Holt that in said conversation Holt informed witness that, whilst the said offer by said C. G. Wagner to Holt of a lease, according to the terms of the said draft above referred to, was pending, Holt objected to the provisions in the said draft to the effect, that the leased premises and property, at the end of the lease, should be returned to the lessor in as good order and condition as the same were at the time of making the lease, reasonable use and wear thereof excepted ; and that the said C. G. Wagner removed this objection by convincing Holt, by assertions and argument, that said provision would not impose any liability upon the tenant for any of the leased premises or property destroyed by fire, or other like cause during the term, without the negligence of the tenant; and that the tenant would only be liable for such property as was destroyed by his negligence." The court refused to allow the defendant to make this proof, and to this ruling he excepted.

After the defendant had closed his testimony, the court, on motion of the plaintiff, excluded from the jury the testimony of the defendant touching what Wagner had said to him as to the legal effect and operation of the clause in the lease, providing that the property should be returned at the end of the term in as good condition as it then was, with the exception of the ordinary wear and tear ; and also that portion of his testimony in which he stated that he believed what said Wagner said to him in relation to such legal effect and operation, and that he would not have signed the same and the notes, if it had not been for the construction and explanation of the lease, made by said Wagner. To this ruling the defendant excepted.

The plaintiff then introduced evidence, in rebuttal, tending to show that he never placed his cook in any house on the leased premises, before or after the fire, and that he never authorized any one else to do so for him ; that, during the term of the lease, he never interfered in any way with any of the personal property embraced in the lease ; but, on the contrary, he constantly refused to interfere with, or exercise any control over any of said property, real or personal, until after the termination of the lease, on 13th April, 1881 ; and that " none of the personal property delivered to defendant Warren under the lease was ever returned by him." As recited in the bill of exceptions, " it was admitted by both parties on the trial of the cause, as evidence in the cause, that the plaintiff had been continuously the wife of said Charles G. Wagner from a time anterior to 1875 down to the present time, and that the plaintiff, in 1876, became the owner of a statutory separate estate, including the aforementioned leased premises and property." The decree relieving the plaintiff from the disabilities of cov-

erture, and the other proceedings relating thereto, were also read in evidence.

The court charged the jury, *ex mero motu*, among other things, as follows: 1. " If the destruction by fire of the leased premises, proved in this case, was not an entire destruction of such premises so leased, then there is not a failure of consideration." 2. " If the plaintiff, or her duly authorized agent took possession of some of the leased property after the fire, in June, 1880, and the defendant knew this, and did not object, but remained in possession of the leased property not destroyed by fire, except that in possession of plaintiff, and long after this continued in possession of the same, and without any objection to such possession on the part of the plaintiff, then the jury could look to this as an implied assent on the part of the defendant to such possession." To each of these charges the defendant duly excepted, and also to the following charges given at the request of the plaintiff: 3. " Although the jury may believe that Mr. Wagner, the husband of plaintiff, ordered his cook to be moved into one of the houses on the leased premises, yet, unless they also find from the evidence that Mr. Wagner was, in doing that act, acting as the agent of his wife, or was authorized by her to do it, or did it with her consent, then that act would not be an eviction ; and they must find a verdict for the plaintiff for the amount of the notes sued on and interest." 4. " Although the jury may believe from the evidence that Mr. Wagner put one of his servants in the possession of one of the houses on the leased premises, yet, if they also believe from the evidence that Mr. Warren knew that such servant was occupying such house, and, after knowing that, kept a horse or horses in the stable on the leased premises, and kept a part of the personal property leased, then he can not set up an eviction as a defense in this case ; and the jury must find a verdict for the plaintiff for the amount of the notes sued on, with interest thereon." 5. " The burden of proving an eviction of Warren by Wagner from the premises leased is upon Warren ; and, unless the testimony offered by him upon that question is satisfactory to the minds of the jury, that Mrs. Wagner, the plaintiff in this cause, did actually evict Warren from the premises, by taking possession thereof, and denying and refusing Warren the right to use or occupy said premises under the lease, then they must find for the plaintiff."

The defendant also duly reserved exceptions to the refusal of the court to give the following charges requested by him in writing: 1. In substance, that if the subject of the lease was substantially destroyd by fire in June, 1880, without the fault or negligence of the defendant, if that destruction went to the extent of rendering the leased premises without value for the

13

only purpose for which they were leased, the plaintiff is not entitled to recover. 2. "If the jury believe all the evidence in this case, the plaintiff is not entitled to a verdict." 5. In substance, that if there had been a total failure of the consideration for the notes sued on, the plaintiff is not entitled to recover. 7. "The authority of Charles G. Wagner to act for his wife in the matter of the leased property need not be proved by positive evidence, if the jury believe, from all the facts and circumstances which have been proved to the satisfaction of the jury, that he was authorized to act for his wife." 8. "The authority of Charles G. Wagner, as the agent of the plaintiff, Mary B. Wagner, may be implied from his previous employment in similar acts, or from subsequent acquiescence, and by circumstantial evidence."

The rulings above noted are here assigned as error.

Rice & Wiley, for appellant. (1) A married woman can not make a valid lease of her estate, and become entitled to sue for, and recover the rents, issues and profits thereof, by virtue of a decree rendered by the chancellor, duly made under section 2731 of the Code of 1876, relieving her of the disabilities of coverture, "so far as to invest" her with "the right to buy, sell, hold, convey and mortgage real and personal property, and to sue and be sued as a *feme sole*." Such decree fixes and establishes her condition, *status* and rights, by the affirmative description or enumeration of her rights. This affirmative description or enumeration must be construed *negatively* as to all rights not enumerated or affirmatively described. This rule of construction as to such affirmative description or enumeration is universally applicable. See cases cited in note to *Ex parte Vallandigham*, 1 Wall. 252. A like rule is uniformly applied by this court in construing our statutory provisions as to the capacities of married women in respect to their estate. Every such statutory provision is uniformly held to be "narrowly enabling;" and not to give to such married women any right not expressed in so many words, or by inevitable implication.—*Shulman v. Fitzpatrick*, 62 Ala. 571; *Drefus v. Wolffe*, 65 Ala. 496. The word "convey" is sometimes used as a *generic* term, and is, therefore, broad enough to embrace a mortgage, lease, and every other *species* of conveyance; but that it was not used in any such generic sense in the statute under consideration, is demonstrated by the fact, that the legislature used, not only the word "convey," but also the word "mortgage." It is a general and reasonable rule, that more general words shall be restrained by other expressions more limited in the same instrument.—*Hailey v. Falconer*, 32 Ala. 539, and authorities there cited. Even if it were conceded that

a lease is a *sale* of an interest in land, it would by no means follow, that the word *sell*, as used in said statute, was used in its broad and generic sense, and, therefore, included the right to make the lease. An administrator of an insolvent estate was authorized to *sell ;* yet he could not lease ; and so it is with a married woman.—*Long v. McDougald*, 23 Ala. 413. (2) As to the admissibility of the evidence tending to show that the lease was procured by false representations, see 10 Searg. & Rawle, 290 ; 6 *Ib.* 471 ; 16 *Ib.* 424 ; 1 *Ib.* 464 ; 6 Wharton, 303 ; *Dixon v. Barclay*, 22 Ala. 370. (3) "The charges given by the court, *ex mero motu*, and the charges given at request of plaintiff, severally call for a reversal of the judgment. They are severally manifestly erroneous. And so it is of each refusal to charge as asked by defendant"

TROY & TOMPKINS and WILSON & WILSON, *contra*. (1) Both before and after the removal of the disabilities of coverture under the statute, husband and wife can execute a valid lease of lands belonging to the wife as her statutory separate estate. Such a power is clearly contemplated by section 2706 of the Code of 1876 ; and any other construction would make the law an absurdity ; it would require them to use and occupy such property themselves, or lose the use of it. Again, that section gives the husband the *rents* of the wife's property, thus clearly contemplating that such a thing as rents might accrue from such property. The well accepted definition of rents is " a yearly profit in money, provisions, chattels, or labor, issuing out of lands and tenements, in retribution for its use." Hence, rents can not exist, unless there is a lease, express or implied, a parting with the use of the lands.—3 Kent's Com. 460. Section 2707 of the Code gives the husband and wife jointly, and section 2731 gives the wife alone, power to sell and convey her property, the latter section conferring the power on her as if she was a *feme sole*. A sale may be defined as an agreement by which one person parts with property, or with an interest in property, and the title thereto, and receives therefor a price in money. This is recognized both by statute and authority. Code, 1876, § 2121, subd. 5 ; *Riddle v. Brown*, 20 Ala. 412 ; *Ricks v. Dillahunty*, 8 Port. 140–1 ; *Stockwell v. Hunter*, 45 Am. Dec. 222. A parting with a term of years in land is a sale of an interest in such land. " A lease is properly a conveyance of any lands or tenements, made for life, for years, or at will ;" and it may be made by any person seized of any estate in the lands, the only qualification being, that the term can not endure longer than the estate of the lessor.—2 Black. Com. 318 ; 4 Kent's Com. 106 ; 1 Bright's Hus. & Wife, 194 ; 2 Bou. Law Dic. title, " Lease ;" *Pickett v. Buckner*, 45 Miss. 226 ;

*Jones v. Marks*, 47 Cal. 243. Counsel for appellant seem to misconceive the opinion of this court on the power of a married woman who has been relieved of the disabilities of coverture. The true rule, as settled by these decisions, is this: She has no powers except such as are given by statute, namely, to buy, sell, hold, convey and mortgage real and personal property; but in the exercise of these powers, she may do any thing that a *feme sole* could do. She can make any sale or conveyance that any other person can make, though she may not be able to bind herself personally.—*Holt v. Agnew*, 67 Ala. 360; *Winn v. Wailes* [not reported]. (2) There was no error in excluding the testimony of Warren as to Wagner's statements to him touching the legal effect and operation of the lease. *Townsend v. Cowles*, 31 Ala. 437; s. c. 37 Ala. 77; Kerr on Fraud & Mis. 90; 2 Chitty on Con. 1041; *Starr v. Bennett*, 5 Hill, 303; *Platt v. Scott*, 6 Black. 389; *Russell v. Branham*, 8 *Ib.* 277; 9 Ind. 488; 33 Ill. 238; 2 Dev. Eq. 393; 16 Ala. 789; 3 Stew. 451. (3) The leased property consisted of the limekiln, various other houses, and about forty acres of land, besides personal property. The destruction of the limekiln before the lease expired had no effect upon defendant's liability for the rent accruing thereafter.—*Chamberlain v. Godfrey*, 50 Ala. 530; *McClellan v. Cook*, Minor, 257; *Linn v. Ross*, 36 Am. Dec. 95; *Hallett v. Wylie*, 3 Am. Dec. 457; *Gates v. Green*, 27 *Ib.* 68. (4) There was no evidence whatever of an eviction by Mrs. Wagner. Even if her husband had placed a woman in one of the houses, she could not be affected thereby, as there was no evidence that she had been informed of this, or that she had ever consented to it. He had no power to bind her, his power as trustee having terminated when the decree of the chancellor was rendered in 1877; and the jury would have no right to infer that he was then acting as her agent, from former acts of agency. This was done, if done at all, more than two years after the lease was executed; and between those dates there is no proof of a single act in which Wagner assumed even to act as his wife's agent.—*Holt v. Agnew, supra*; 2 Greenl. on Ev. § 64; *Scarborough v. Reynolds*, 12 Ala. 252; *Brunson v. Brooks*, 68 Ala. 248. (5) The principle laid down in *Crommelin v. Thiess & Co.*, 31 Ala. 421, that any act of the landlord, depriving the tenant of the enjoyment of the rented premises to the full extent secured by the lease, is an eviction, and would authorize the tenant to abandon the premises, and thereby exonerate himself from liability to pay rent, but if he fails to abandon, or does any act inconsistent with the right to abandon, he thereby waives the right, is the principle asserted by the charges given on the question of eviction, and is supported by all the authorities.—*Chamberlain v.*

[Warren v. Wagner.]

*Godfrey, supra.   Rice v. Dudley,* 65 Ala. 70 ; Bou. Law Dic.
title, " Eviction."

BRICKELL, C..J.—A married woman, having a statutory
separate estate, is relieved of the disabilities of coverture by
decree of the chancellor, rendered in pursuance of the statute
(Code of 1876, § 2731). Subsequently, with the concurrence
of her husband, manifested by his joining in the execution of
the lease, she leases her lands for a term of years, taking notes
payable to herself alone, for the installments of rent as they
accrue according to the lease.   Two questions are raised upon
this state of facts : First, is the lease valid ; secondly, can the
wife in her own name maintain an action at law for the re-
covery of the rents as they fall due.

The effect of the statute, and of the decree of the chancellor
rendered in conformity to it, has been of frequent considera-
tion in this court ; and, as is insisted by counsel for appel-
lant, the statute has been regarded as enabling the wife, as
enlarging her capacity to contract, and her capacity to sue and
be sued alone, only to the extent, and for the purposes specified.
It has not been construed as conferring a capacity to contract
generally ; nor a capacity of suit, otherwise than as it may
result from her contracts or engagements, entered into in the
exercise of the right with which she is invested.—*Dreyfus v.
Wolffe*, 65 Ala. 496 ; *Holt v. Agnew*, 67 Ala. 360 ; *Ashford
v. Watkins*, 70 Ala. 156. The right or power with which she
is invested, in the words of the statute, is, " to buy, sell, hold,
convey and mortgage real and personal property, and to sue
and be sued as a *feme sole*." Though the right or power to
lease lands is not in express words conferred, a construction of
the words *sell and convey*, which would not include it, would
be exceedingly narrow and illiberal, rendering the statute an
abridgment, rather than an enlargement of the power over
her lands, which the wife, in conjunction with her husband,
could exercise, either at the common law, or under the pre-
existing statutes, which disable the husband from taking title
to her property of any kind, and confer upon her capacity to
hold it as if she were a *feme sole.*

The common law, upon marriage, " without the birth of
issue, casts upon the husband an estate in all the wife's real
property in possession, whether of inheritance or of freehold
for life, during the joint lives of himself and wife."—1 Bish.
Mar. Women, § 529. The death of the wife, or the death of
the husband terminated the estate. If there was issue born
alive of the marriage, capable of inheriting the estate, the
estate of the husband endured for his own life. Without the
concurrence of the wife, the husband could bargain, sell and

convey his estate in her lands; and the larger power included the less of leasing them, reserving the rents to himself alone. The term created by the lease could endure only during the continuance of his estate; for the principle of the common law was inflexible, "that no man could grant a lease to continue beyond the period at which his own estate was to determine." 4 Kent, 116. The wife was incapable of leasing her lands, and her lease, like her conveyance in fee, was *void*, not *voidable*, as was the lease of an infant; *void*, not only because the present interest was in the husband, but because coverture disabled her from binding her estate, or binding herself personally. In the absence of statutes authorizing a lease of the lands of the wife by husband and wife jointly, they could join in a lease, and, during the continuance of the estate of the husband, it was valid and operative. Upon the expiration of his estate, the lease was *voidable*, not *void;* the wife surviving, or, in the event of her death her heirs, had the election to affirm or disaffirm it; an acceptance of rent was an affirmance.—1 Bish. Mar. Women, §§ 538–45. Statutes, expressed in general terms, empowering husband and wife to convey her lands, included the power of leasing them ; and a lease, executed in the mode prescribed by the statutes, was binding upon the wife, or her heirs, after the death of the husband and the expiration of his estate.—1 Bish. Mar. Women, § 549 ; *Jackson v. Holloway*, 7 Johns. 81; *George v. Goldsby*, 23 Ala. 326. In *Jackson v. Holloway*, *supra*, said Thompson, J.: "The wife may, during coverture, part with the whole, or any portion of her interest in real estate, if the deed be acknowledged in the mode prescribed by the statute, concerning the proof of deeds. The words of the act are general, extending to any estate of the *feme covert*."

The statute creating and defining the separate estates of married women, and the provisions of the Constitution preserve to the wife the capacity of taking and of holding property, notwithstanding coverture, and operate to deprive the husband of the right he had by the common law of taking and of holding property owned by her at the time of marriage, or to which she subsequently became entitled. In very general terms, it is declared : " The property of the wife, or any part thereof, may be sold by the husband and wife, and conveyed by them jointly, by instrument of writing, attested by two witnesses." The acknowledgment of the conveyance before an officer authorized to take acknowledgments of conveyances, is the equivalent of an attestation by two witnesses.—Code of 1876, §§ 2707–08. The statute has not been construed as empowering husband and wife to mortgage the estate of the wife ; for a power simply to *sell and convey*, does not include a power to mortgage, unless

there is "something added over and above, showing that the power of sale is not to be taken in its primary sense, but means a power to mortgage."—*Bloomer v. Waldron*, 3 Hill, 361. It is not an absolute, unconditional sale, a sale outright, which is authorized ; a conditional sale is equally within the meaning of the statute.—*Peeples v. Stolla*, 57 Ala. 53. A lease is a sale and conveyance of a partial, qualified, limited interest in lands. It is defined as "a species of conveyance for life, for years, or at the will of one of the parties, usually containing a reservation of rent to the lessor."—Taylor's Land. and Ten. 314. There can be no good reason assigned for compelling husband and wife to a sale, absolute or conditional, of the entire estate or interest, when a lease for a term, conveying a limited interest, the reversion remaining in the wife, would be more beneficial to them. The lease for a term that may possibly endure beyond the life of husband and wife, may be necessary to preserve the estate from waste, or to make it a source of income. The estate, as is the fact in reference to the premises, the subject of present lease, may be fitted and adapted to uses requiring an outlay of capital, or skill and experience to manage and operate them profitably. Neither husband nor wife may have the skill and experience, or they may not have the capital, or, if they have it, may be unwilling to appropriate it to these uses. The interests of the wife, the preservation of her real estate, will often be best promoted by leasing it, rather than by sale, converting it into some other species of property. All principles of just construction require that the general words of the statute, authorizing a sale and conveyance of the wife's statutory estate, should be interpreted as comprehending a lease, which is a sale and conveyance of a qualified, partial interest, in contradistinction of a sale and conveyance of the entire estate.

Construing the statute investing a married woman relieved of the disabilities of coverture with the right to buy, sell, hold, convey and mortgage real and personal property, as similar statues are construed, we must hold, that she has capacity, in conjunction with her husband, to make a valid lease of her lands for a term of years. If the statute were not so construed, though its plain purpose is to enable the wife to enlarge her capacity of contracting, and of conveying her property, it would operate an abridgment of a power she could have exercised at common law and under pre-existing statutes. The capacity of the wife to sue and be sued alone is co-extensive with her capacity to contract or convey, as it is defined by the statute. Having authority to make the lease in conjunction with her husband, the rents could properly be reserved to her alone,

[Warren v. Wagner.]

and for them she may sue alone, not joining her husband. The demurrer to the first plea was properly sustained.

It has repeatedly been decided that when a party offers evidence as a whole, parts of which are admissible, and parts inadmissible, the court may, without error, overrule the entire proposition. The duty of separating and distinguishing the admissible from the inadmissible parts can not be cast upon the court without its consent.—1 Brick. Dig. 887, § 1202. There is much of the evidence of the witness Holt, proposed to be introduced, which consists of conversations between himself and the defendant, not parts of the *res gestæ*, and had in the absence, and without the knowledge of the plaintiff. These conversations were plainly inadmissible ; if it be, that there are other parts which are admissible, they were not pointed out in the circuit court, and an offer made to introduce them separately.

The representation of the husband, pending the negotiations for the lease, and prior to its execution, seems to have been limited to the legal effect and operation of a particular clause or covenant, and not to the lease taken in its entirety. The clause or covenant to which the representation related, was that by which the lessee stipulates that he would "deliver up the said leased premises, with all the machinery and other things mentioned in the schedule hereunto attached, to the said Mary B. Wagner, her heirs or assigns, and quietly, at the expiration of the said term of three years, in as good order and condition as the same now are, reasonable use and wear and tear excepted." The representation was, that this clause or covenant did not impose a liability upon the lessee to repair or to restore, if there was by fire, or other unavoidable accident, a destruction of the premises, or a material part thereof, during the term. If the representation was (as we are now bound to regard it) confined to the legal effect of this particular clause, and was without reference to the lease in its entirety, it was not untrue. In all leases it is implied, if it be not expressed, that the lessee will pay the rent as it accrues, will make tenantable repairs, will avoid the exposure of the premises to ruin or destruction by acts of omission or commission, and, on the expiration of the term, will quietly surrender possession. In the absence of an *express covenant*, he is not amenable because of the deterioration of the premises from the ordinary *wear and tear* incident to their reasonable use ; nor, if by unavoidable accident, or by the act of God, or by the act of a public enemy, there is injury to, or a destruction of the premises, is he bound to repair or restore. Taylor's Land. & Ten. § 343 ; *Nave v. Berry*, 22 Ala. 382 ; *U. S. v. Bostwick*, 94 U. S. 53 ; *Warner v. Hitchins*, 5 Barb. 666. A covenant on the part of the lessee, like that we are now con-

sidering, that, upon the expiration of the term, he will return or surrender possession of the premises in the same condition they were when he entered into possession, the usual or natural wear and tear excepted, is not a covenant to repair or rebuild; it is but the expression of the implied obligation or duty resting upon him.—Authorities *supra; Maggort v. Hansbarger*, 8 Leigh, 532; *Howeth v. Anderson*, 25 Texas, 557. In this view, there was no misrepresentation, and the evidence was irrelevant. It is the settled practice to entertain a motion for the exclusion of evidence, which is not merely secondary, but in itself illegal, or irrelevant, at any stage of the cause before the retirement of the jury.—1 Brick. Dig. p. 887, §§ 1190, 1197. Whether the lease taken in its entirety contains any covenant binding the lessee to rebuild or restore, if there was injury to, or destruction of the premises, without fault or neglect on his part, is not a question now presented. If such obligation is imposed, and, as is most probable, the representation of the husband had reference to the lease in its entirety, whether it was the expression of an opinion upon matter of law, as distinguished from the representation of matter of fact; and if it be the representation of matter of law, whether it was not fraudulent, as proceeding from a party having superior means of information, professing a superior knowledge of the law, upon which the lessee relied, in ignorance and in confidence, trusting to the truthfulness of the husband, and thereby enabling the lessor to gain an unconscionable advantage, are not inquiries now involved. Nor do we see that they can arise in this cause, or unless there should be an effort to enforce the clause or covenant of the lease, which imposes the obligation. There is no possible aspect of the case in which the evidence was not irrelevant, and it was properly excluded.

A lessee of premises destroyed during the term by unavoidable accident is not excused from the performance of an express provision or covenant to pay rent for the term, unless he has protected himself by an express stipulation for the cessation of rent in that event, or the landlord has covenanted to repair or rebuild.—3 Kent, 603; Taylor's Land. & Ten. §§ 372–75, 377; *Chamberlain v. Godfrey*, 50 Ala. 530. A limitation, or rather an exception to the general rule, which seems to obtain, and has been specially applied to leases of apartments in a tenement, or to leases of tenements for particular uses, is, that the destruction must not be of the entire subject-matter of the lease; there must be remaining something capable of holding and enjoyment by the lessee. The value of the premises may be diminished; they may be rendered incapable of yielding the benefit it was expected to realize from their use and occupation. So long as the thing is capable of holding under the lease, the

obligation and duty of paying the rent continue.—*Chamberlain v. Godfrey, supra; McMillan v. Solomon,* 42 Ala. 356. Whether this limitation or exception to the general rule, holding a lessee to liability upon his express and unconditional promise or covenant to pay rent, is not, as it has been usually applied, confined to a lease of tenements for particular purposes, or to the apartments of a tenement, and can not be extended to a lease of lands and tenements, is not now of importance. This lease is of lands and tenements, accompanied with the right of quarrying stone upon the lands during the term. The only injury or destruction upon the premises was of the lime-kiln, the use of which, it may be, was the principal consideration moving the lessee to enter into the lease, and it was probably the thing from which it was expected the principal profit would issue. The lands and the tenements remain, capable of use and enjoyment, and the right of quarrying stone continues. It would be a latitudinous construction of the exception, not warranted by authority, that would draw this case within its influence. There is no error in the several rulings of the circuit court upon this point.

The eviction of a tenant consists in the disturbance of his possession, his expulsion or amotion depriving him of the enjoyment of the premises demised, or any portion thereof, by title paramount, or by the entry and act of the landlord. The eviction may operate a bar, partially or wholly, to the right to demand rent falling due in the future.—Taylor's Land. & Ten. §§ 378–88. If it be from a part only of the premises, by title paramount, the rent is discharged partially, in proportion to the value of the premises of which the tenant is dispossessed. But if the eviction is the act of the landlord, the entire rent is suspended during its continuance, for the reason that a man can not apportion his own wrong, and the landlord shall not so apportion his tortious act and entry, as to compel the tenant to pay rent for the part of the premises upon which he does not enter.—*Royce v. Guggenheim,* 106 Mass. 201 (8 Am. Rep. 322); *De Witt v. Pierson,* 112 Mass. 8 (17 Am. Rep. 58, *note*); *Crommelin v. Thiess,* 31 Ala. 412; *Chamberlain v. Godfrey,* 50 Ala. 530. A mere trespass by the landlord upon the premises, not intended by him as a permanent amotion or expulsion of the tenant, or to deprive him of the possession and enjoyment of the premises, may entitle the tenant to recover damages, but it will not amount to an eviction. Taylor's Land. & Ten. § 380; *Lounsbery v. Snyder,* 31 N. Y. 514; *Edgerton v. Page,* 20 N. Y. 281; *Lynch v. Baldwin,* 69 Ill. 210. If the damages are capable of legal measurement by a pecuniary standard, as if they consist only of the value of use and occupation during the continuance of the trespass,

they would form proper matter of set-off to an action by the landlord for the recovery of rent.—*Cage v. Phillips,* 38 Ala. 382; *Holley v. Younge,* 27 Ala. 203; *Kannady v. Lambert,* 37 Ala. 57. Or if the damages are unliquidated, and not capable of legal measurement by a pecuniary standard, they will form matter for recoupment in an action by the landlord for the recovery of rent.—*Lynch v. Baldwin supra; Batterman v. Pierce,* 3 Hill, 171. The eviction, or the trespass, may be the act of the landlord in person, or it may be the act of a servant or agent, for which he is answerable upon the general doctrine holding a principal liable for the misfeasances or torts of a servant or agent.—Story on Agency, § 452. Direct or positive evidence that the wrongful act, whether it be of eviction or of trespass, was done under the authority, or by the consent of the landlord, is not necessary. Such evidence is not often attainable, and the fact, like any other controverted fact, is capable of proof by circumstances. The nature and character of the act, taken in connection with the relation of the landlord to the actor; his employment or agency in the business of the landlord; and the acquiesence of the latter in former acts, accompanied by circumstances indicative of his knowledge that the act was done, or continued, and the absence of objection upon his part, are facts which must be considered by the jury, whose business it is to determine the inquiry, whether he authorized or assented to the act complained of as wrongful. *McClung v. Spotswood,* 19 Ala. 165; *Krebs v. O'Grady,* 23 Ala. 726; *Gimon v. Terrell,* 38 Ala. 208. When the landlord enters and dispossesses the tenant of a part of the premises, a discharge of the entire rent will not result, unless it be shown that the tenant surrendered or abandoned possession entirely. Nothing less than an entire abandonment or surrender will operate a dissolution of the tenancy, and a suspension or discharge of the whole rent. The rent is discharged only *pro tanto,* to the extent of the value of the use and occupation of the part of the premises of which the tenant is dispossessed, if he remains in undisturbed possession of the residue.— *Crommelin v. Thiess,* 31 Ala. 412; *Chamberlain v. Godfrey,* 50 Ala. 530; *Willard v. Tillman,* 19 Wend. 358.

The fifth instruction to the jury, given at the request of the plaintiff, in view of the rules we have stated, is misleading in its tendency, if not in all respects erroneous. It must be admitted, as is affirmed in the instruction, that the burden of proving an eviction rested upon the tenant. It is affirmative matter of defense, the *onus* of proving which rests upon the party pleading or relying upon it, in discharge of a legal obligation. When the law casts upon a party the burden of proving a fact, for all the purposes of a particular case, the fact can

[Warren v. Wagner.]

not be supposed to exist, if the evidence of its existence does not satisfy the minds of the jury. This is not the only proposition the instruction embodies and affirms; it proceeds to declare that the jury must be satisfied "that Mrs. Wagner, the plaintiff in this cause, did actually evict Warren from the premises, by taking possession thereof, and denying or refusing Warren the right to use or occupy the said premises under the lease." Instructions given or refused must be taken and construed in connection with the evidence, for it is to the evidence the jury are expected to, and will apply them. The eviction, or trespass, whichever it may be ascertained is its true character, the evidence tends to prove, was not the personal act of Mrs. Warren, but of her husband, and her responsibility for it is to be traced to the fact (if the fact be shown) that she authorized or assented to it. The only interepretation of the instruction, in view of the evidence, is that her personal act only, not the act of another, authorized or assented to by her, will amount to an eviction. An eviction is not necessarily an actual, forcible taking possession of the demised premises, or any part thereof, nor does it necessarily consist in the expulsion of the tenant; nor need it be attended with a denial or refusal to permit the tenant longer to occupy under the lease. *Lounsbery v. Snyder*, 31 N. Y. 514; *Edgerton v. Page*, 20 N. Y. 281; Taylor's Land. & Ten. § 381. The duty and obligation of the tenant to pay rent result from his beneficial enjoyment of the premises, unmolested by the landlord. There is molestation, relieving him from the duty and obligation, whenever the landlord, personally, or through the act of another, however quietly, enters upon, and possesses himself of the premises, or any part thereof. The possession itself, taken and continued, though it may be in the absence, and without the knowledge of the tenant, is inconsistent with his possession and beneficial enjoyment, which the landlord is bound not only to abstain from molesting, but to maintain. There is no duty resting upon the tenant to demand of the landlord restoration, and, of consequence, there can be no necessity for a refusal to restore, as an element of eviction. Yet, such is the irresistible inference from the instruction. If the landlord, by himself, or by the entry of another, which he authorized, or to which he assents, enters upon, and takes possession of a material portion of the premises, the entry and possession, at the election of the tenant, is an eviction from the whole, authorizing an abandonment of the lease, and absolving the tenant from the payment of rent falling due in the future. But if the tenant elects, he may remain in possession of the residue of the premises, and if he makes the election, the tenancy is dissolved only partially, and the discharge of rent

[Blake v. Harlan.]

is only partial.   The entry and possession of the landlord, or of another by his authority, or with his assent, though there is no actual, or forcible, or physical expulsion of the tenant, is of itself an eviction.   While the tendency of the instruction is misleading, we do not say that, of itself, it should operate a reversal of the judgment ; perhaps, the defendant ought to have asked an explanatory charge, obviating the misleading tendency.

The seventh and eighth instructions, requested by the defendant and refused by the circuit court, affirm only the propositions which we have heretofore stated, that the agency of the husband, or the assent of the wife to his act may be proved by circumstances, and that it may be inferred from his employment in the transaction of her business, and her acquiescence in his former acts in reference to the leasing of the premises, their relationship, and the nature and character of the act imputed to him.   The inference, or implication is of fact, to be drawn by the jury ; it is not an inference or implication of law.   It is the province of the jury to determine whether the facts show the agency or authority of the husband, or the assent of the wife to his act.   The facts and circumstances are competent evidence for their consideration in determining the existence of either or both facts; whether it be sufficient rests in their judgment.   The errors to which we have adverted compel a reversal of the judgment.

Reversed and remanded.