[Anderson, Execx. v. Winton.]

# Anderson, Execx. *v.* Winton.

### *Action upon Rent Contracts.*

1. *Writings construed together as one instrument; when' lease contracts not so construed.*—In order for two or more writings to be construed together as constituting the same contract, it is necessary that they relate to the same transaction and refer to each other; and where two contracts of lease are made on different days and are separate and distinct, having separate and distinct considerations and purposes, and neither referring to the other, and the latter was not in contemplation of the parties at the time the first was entered into, they cannot be construed as constituting one contract.

2. *Action upon lease contracts; admissibility of evidence.*—In an action upon two contracts of lease, where it is shown that under one of them the lessee rented the lands at so much per acre and there was included in said lease tenement houses, and under the other lease the lessee was to pay a designated sum for another place, it is not competent to prove what was a reasonable rental value for the tenement houses, although the lessee had testified that he had rented but one of them for a particular amount.

3. *Same; same.*—In such a case it is competent to prove the fact that the lessee had rented one of the tenement houses; such evidence tending to show that the defendant, who was lessee, retained possession of said house as well as the others.

4. *Landlord and tenant; what constitutes eviction of tenant.*—The eviction of a tenant consists in the disturbance of his possession, his expulsion or amotion by title paramount or by the entry and act of the landlord depriving the tenant of the enjoyment of the rented premises or a portion thereof.

5. *Same; same; effect of eviction.*—While the eviction of a tenant may operate a bar partially or wholly to the right of the landlord to demand rent falling due in the future, a discharge of the entire rent will not result when the landlord enters and dispossesses a tenant of a part of the premises, unless it be shown that the tenant surrendered or abandoned possession entirely; since nothing less than an entire abandonment or surrender will operate a dissolution of the ten-

[Anderson, Execx. v. Winton.]

ancy or suspension and discharge of the whole rent, and the
rent is discharged only *pro tanto* to the extent of the value,
use and occupation of the part of the premises of which the
tenant is dispossessed if he remains in the undisturbed pos-
session of the residue.

6. *Pleading and practice; appeal from justice of peace court; ef-
fect of failure to file plea in abatement as to jurisdiction.*
When a cause is removed into the circuit court by appeal
from a justice. of peace court, and is there pending, it is
competent for the parties to treat it as if originating in the
circuit court; and if they do so and the defendant fails to
file a plea in abatement, a judgment may be rendered in the
circuit court for an amount exceeding one hundred dollars,
which is the limit of the jurisdiction of the justice of the
peace.

7. *Action upon contract of lease; plea of recoupment; charge in
reference thereto.*—In an action upon a contract of lease,
where the defendant files a special plea claiming recoupment
on the rent account, for that hay was cut from the rented
premises, and the evidence tends to show that hay was cut
from the land for which the plaintiff would owe the defend-
ant, and there was also evidence tending to show that the
defendant was given credit for the hay so cut from the
land, it is proper for the court to refuse a charge which in-
structs the jury that if they believe the evidence they can
not find for the defendant under the plea of recoupment.

APPEAL from the Circuit Court of Madison.
Tried before the Hon. OSCEOLA KYLE.

This action was brought by the appellant, Julia V.
Anderson, as executrix of the estate of W. P. Anderson,
deceased, against the appellee, W. L. Winton; and was
originally commenced in a justice of the peace court. The
cause of action and complaint are sufficiently shown in
the opinion.

After the case was taken by appeal to the circuit court
the defendant filed the plea of general issue and of re-
coupment, and also the following special pleas: "3. The
defendant further says that he is due a balance of four-
teen and 87-100 dollars ($14.87) to the plaintiff as rent
for the Steele place which sum the defendant tendered
to the agent of plaintiff, Capt. Milton Humes, in lawful
money of the United States of America, on or about the

—— day of January, 1900, before this suit was brought, and plaintiff refused to accept the same, and defendant here presents said money into court and says that he has ever been ready and is now ready to pay said money to plaintiff, and that defendant claims judgment for his costs and damages in this cause.

"4. Defendant further says that plaintiff evicted him from the Underwood place, by putting other tenants in possession of the said Underwood place and cutting the Johnson grass thereon in May or June, 1899, and therefore the defendant is not due any rent for the said Underwood place.

"5. Comes the defendant in the above entitled cause, and claims recoupment on the rent account sued on for the rent of the Underwood place, from which he was evicted, and the Johnson grass which was cut and taken away by plaintiff in May or June, 1899, to the damage of defendant to two hundred dollars." Issue was joined upon these several pleas.

In addition to the facts set forth in the opinion, the defendant as a witness testified that after the execution of the lease for the Underwood place on May 18th, 1899, he, the defendant, found that one Byrd Donnelson, was in possession of and cultivating ten acres of said land; that upon discovering this fact he went to the agent of the place and told him that unless he got possession of the whole land, he did not want any of it, and upon said agent refusing to dispossess Donnelson he refused to take the place. The defendant as a witness further testified that after the execution of the lease of the Underwood place, Johnson grass was cut off of ten acres of said land, that there were two cuttings of said grass, that it was agreed that he, defendant, should be allowed a credit for the value of the grass cut from the Underwood place, but that no credit had been allowed him. Witnesses for the plaintiff testified in rebuttal, as to the cutting of the Johnson grass, that defendant was allowed credit for the value of the grass cut from said place after the execution of the lease. The plea of tender as offered by the defendant was proved, and it was shown

that the tender was paid into court and kept good.

The portion of the court's general oral charge to which exceptions were reserved are sufficiently shown in the opinion.   The plaintiff requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the eviction be from a part only of the premises by title paramount, the rent is discharged partially in proportion to the value of the premises of which the tenant is dispossessed.   If the jury believe from the evidence that the tenant was evicted by a paramount title of only a part of the land, then he is entitled to be discharged only partially in proportion to the value of that part of the premises, if you should so find from the evidence, from which the defendant was evicted."   (2.)   "The contracts sued on are to be taken and construed as one contract, and I charge you that defendant cannot elect to repudiate a part of a contract and stand by a part, he must either elect to repudiate the contract as a whole or stand by it as a whole."   (3.) "The two instruments in writing in evidence in this cause, the one purporting to be a lease of a part of the Steele place by the plaintiff to the defendant, and the other purporting to be a lease by the plaintiff to the defendant of a part of what is known as the Underwood place must be construed together, and as such they constitute one entire contract whereby the defendant leased from the plaintiff the lands described therein except that a portion of the land on the Steele place described in the first instrument, the defendant by the second instrument is released and relieved from the rent of." (4.) "If the jury believe the evidence they must find for the plaintiff under the fourth plea of defendant."   (5.) "If the jury believe the evidence they cannot find for the defendant under the fourth plea."   (6.) "If the jury believe the evidence they cannot find for the defendant under the third plea."   (7.) "If the jury believe the evidence they cannot find for the defendant under the fifth plea."

The court at the request of the defendant gave to the jury the following written charges, to the giving of each

of which the plaintiff separately excepted: (3.) "If the jury believe from the evidence that Winton tendered to Captain Humes the entire amount owing from him under the contract of rent, and has kept said tender good by depositing in court, they must find for the defendant on his plea of tender." (5.) "If the jury believe from the evidence that plaintiff rented a portion of the land covered by the contract to Byrd Donnelson, the defendant had the right to refuse to cultivate or pay rent on the balance of the land." (6.) "If there was an eviction from a portion of the land covered by the contract, the defendant had the right to treat it as an eviction from the whole." (10.) "In determining whether or not there was an abondonment of the Underwood place, you cannot take into consideration the fact that the defendant kept possession of the houses and a portion of the Steele place."

There were verdict and judgment for the defendant. The plaintiff appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

HUMES, SHEFFEY & SPEAKE, for appellants.—The court below errer in refusing to allow the plaintiff to ask defendant what was the reasonable monthly and yearly rental value of the three brick tenement houses, and also erred in excluding from the jury the evidence that the defendant had rented one of them for nine months for $27.00. This evidence was material and pertinent as going to show the intention of the parties to the contracts, the point in dispute between the parties being that the two contracts in evidence and relied upon for recovery by plaintiff constituted one contract and related to the same subject matter. The evidence shows that the Steele and Underwood places were owned by the plaintiff, were contiguous and separated only by an imaginary line and were designated by the names of their former owners.—*Boykin v. Bank*, 72 Ala. 270; *Pollard v. Maddox*, 28 Ala. 325.

The court erred in its oral charge to the jury. The

contracts should have been construed together as one contract. "Two writings connected by a reference to each other must be construed together as if they formed a single instrument."—*Robins v. Webb,* 68 Ala. 393; *Jordan v. Jordan,* 65 Ala. 301.

It was error for the court to charge the jury that if the defendant was evicted from a part of the Underwood place, he might treat the contract as a nullity, although he did not abandon the whole place. Such is not the law. Nothing less than an entire abandonment will operate as a dissolution of the tenancy and a discharge of the whole rent.—*Warren v. Wagner,* 75 Ala. 189; *Robins v. Webb,* 68 Ala. 393; *Jordan v. Jordan,* 65 Ala. 301; *Warren v. Wagner,* 75 Ala. 188.

The court erred in instructing the jury that they could not allow the plaintiff any interest and could not find for more than one hundred dollars.—*Abraham v. Alford,* 64 Ala. 281; *Harsh v. Heflin,* 76 Ala. 499; *Carew v. Lillienthal,* 50 Ala. 44; *State v. Lott,* 69 Ala. 147; *Flinn v. Barber,* 64 Ala. 193.

COOPER & FOSTER and HUNT & PETTY, *contra.*—Under the facts of this case, there was an eviction of the defendant from the Underwood place, and this eviction gave him the right to abandon the entire place and to be discharged from the rent thereof.—*Warren v. Wagner,* 75 Ala. 188; 18 Amer. & Eng. Ency. of Law, 298.

The two contracts of lease sued on in this case could not be construed as one contract. This court has laid down the rule that two writings may be presumed to evidence but one contract when they are "executed on the same day, relate to the same subject matter, and one refers to the other."—*Byrne v. Marshall,* 44 Ala. 555; *Mobile & M. R. Co. v. Gilmer,* 85 Ala. 422; *Chambers v. Marks,* 93 Ala. 412; 17 Amer. & Eng. Enc. of Law, 9.

There was no error in the court instructing the jury that they could allow interest and return a verdict for more than one hundred dollars.—*Wharton v. King,* 69 Ala. 365.

HARALSON, J.—This suit was instituted in a justice's court by the appellant, Anderson, as executrix, against the defendant, Winton, to recover $100 alleged to be due on a contract for rent entered into on the —— day of January, 1899, payable 1st December following, of "property known as Steele and Underwood place."

The case was decided in favor of the plaintiff in that court, and defendant appealed to the circuit court, where the plaintiff filed an amended complaint, claiming $100 with interest thereon, due by defendant on rent contracts made by defendant with plaintiff about the —— day of January, 1899, and payable about November 1st thereafter for rent of property known as the Steele and Underwood place. Two other counts were added, the one for $100 with interest, on an account, due by defendant to plaintiff, on or about 1st November, 1899; and the other, on an account stated, for same amount alleged to be due 1st November, 1899.

The defendant interposed demurrers to these counts, but no judgment appears to have been rendered thereon.

The defendant filed pleas to the complaint of non-assumpsit, recoupment, set-off, tender and eviction of defendant by plaintiff from the premises alleged to have been rented by him from her. The plaintiff demurred to the 3d and 5th pleas, the first of which was the plea of tender, and the latter a plea of recoupment; but there was no judgment on these demurrers.

On the trial, the jury rendered a verdict in favor of the defendant on the plea of tender, and judgment was rendered thereon, discharging him with his costs.

The plaintiff introduced in evidence a contract of lease by her to the defendant, of what is known as the Steele place, including a garden spot and four brick tenement houses. The place rented, is referred to in the said contract as the "Steele place," lying west of the "Underwood place." The two places were shown to belong to the plaintiff, and lay adjacent to each other, the one separated from the other by a ditch, and received their names from their former owners. This contract

bore date the 11th January, 1899; and under it defendant was to pay $3.50 per acre rent. She also introduced another lease by defendant from her, of date 18th May, 1899, of what is known as the Underwood farm, east of what is known as the Steele place or farm, the consideration thereof being $150, payable 1st November, 1899.

It was also shown that by this last lease, and in consideration of it, the former lease of the Steele place was surrendered, except the garden, four brick tenement houses and four acres of land. The appellant's counsel say in their brief: "The evidence of Sheffey and Humes for plaintiff shows that the land on the Steele place was exchanged for the land on the Underwood place, and Winton (the defendant) retained the brick houses, garden spot, barn and four acres on Steele place, and he was allowed to do this in consideration of said exchange, and for the purpose of cultivating the land on the Underwood place." Again they say: "The whole evidence in the case shows, that the second contract (of lease) was simply an exchange of land on the Steele place, for land on the Underwood place, the defendant being released from the land on the Steele place, with the exception of the garden spot, houses, barn and four acres." There is nothing in the evidence contrary to these statements, but the evidence tends to support them.

The theory on which the case was tried was, on the part of plaintiff, that the two lease contracts are to be construed as one; that the defendant had no right to abandon his lease of the Underwood place, and that he owed the rent of that place for the entire year, together with the reasonable rent for the houses, barn, garden of four acres of land retained by him on the Steele place; while that of the defendant was, that at the time he entered into the last contract for the rent of the Underwood farm, the plaintiff had already rented a valuable portion of it to another person, and refused to put him in possession of the whole of it, on which account he abandoned, and had a right to abandon the lease of said Underwood place, and owed plaintiff nothing therefor, but he admitted owing for the four acres of land on the Steele place, which he retained and did not surrender,

[Anderson, Execx. v. Winton.]

when he exchanged the Steele for the Underwood place, and for which he tendered, as he contends, the reasonable value of rent. The evidence, then, shows that the defendant, in making the exchange of places, did not give up all of the Steele place, but retained the garden spot, four acres of land and the four tenement houses, and this was part of the consideration for which he leased the Underwood farm. In other words, he agreed to pay $140 for the Underwood farm, if plaintiff would release him from the rent of the Steele place, allowing him to retain the houses, garden and four acres of land on the Steele place. There thus appears to have been two distinct leases,—the one for the Underwood place, and the other, for a part of the Steele place,—the houses, garden and four acres of land. As to these, the lease of the Steele place was not surrendered in the lease of the Underwood place but continued under and according to the terms of the first, or Steele lease. The remainder of the Steele place alone was surrendered from the operation of the first lease.

The evidence on the part of the defendant tended to show, that at the time he rented the Underwood farm, the plaintiff had already rented a portion of it to another party, and that he could not get, and was not placed in possession of the whole of the farm proper, in consequence of which, he abandoned it, and refused to cultivate any of it. He does not deny, however, that he retained the tenement houses, garden and four acres of land on the Steele place, and in fact he alleges having tendered plaintiff $14.85 for the rent of the four acres. The evidence on the part of the plaintiff tends to show, that defendant did not abondon all of the Underwood farm proper, but consented to the lease of that portion of it, which had been rented to another party, at the time he made his contract.

The two contracts of lease were made, as shown, the first on the 11th January, 1899, and the other on the 18th of May following. The latter was not in contemplation between the parties, at the time the first was entered into; they do not refer to each other, and the con-

[Anderson, Execx. v. Winton.]

tention of the plaintiff that they are to be construed as one cannot be sustained. They were separate and distinct, having separate and distinct considerations and purposes.—*Byrne v. Marshall,* 44 Ala. 355; *Dexter v. Ohlander,* 89 Ala. 263; *Chambers v. Marks,* 93 Ala. 412.

On the cross-examination of the defendant, by plaintiff, he stated, without objection, that he retained possession of three brick tenement houses on the Steele place, and the garden spot of about four acres, and the barn on said Steele place, and rented out one of the houses and got $27 for it. The plaintiff then asked him: "What was the reasonable monthly or yearly rental value for each one of said three brick houses which you retained possession of?"—the fourth having been rented out. The court sustained an objection by defendant to this, and declined to allow the witness to answer. In this, there was no error. It was entirely immaterial, under the Underwood lease, which was for the sum of $140 for the year, at what price he rented one of the four houses on the Steele place.

The defendant moved to exclude from the jury the statement by himself on his cross-examination by plaintiff, that he had rented one of the four houses for $27, and the court excluded it. There was error in this ruling, since it was competent, as tending to show that the defendant retained possession of this house as well as the other three.

The rule as to the eviction of a tenant from the leased premises, such as will give him a right to abandon in whole or in part, has been well stated by the adjudications of this court to be, that "The eviction of a tenant consists in the disturbance of his possession, his expulsion or amotion, depriving him of the enjoyment of the premises demised, or any portion thereof by title paramount, or by the entry and act of the landlord. The eviction may operate a bar, partially or wholly, to the right to demand rent falling due in the future.—Taylor's Landlord & Tenant, §§ 378-88. * * * When the landlord enters and dispossesses the tenant of a part of the premises, a discharge of the entire rent will

not result, unless it be shown that the tenant surrendered or abandoned possession entirely. Nothing less than an entire abandonment or surrender will operate a dissolution of the tenancy, and a suspension or discharge of the whole rent. The rent is discharged only *pro tanto,* to the extent of the value of the use and occupation of the part of the premises of which the tenant is dispossessed, if he remains in undisturbed possession of the residue."—*Warren v. Wagner,* 75 Ala. 202-3 ; *Chamberlain v. Godfrey,* 50 Ala. 530; *Crommelin v. Theiss,* 31 Ala. 412.

In the general oral charge to the jury, the court instructed them, among other things, "That if the jury believe from the evidence, that the said defendant had been evicted from a portion of the Underwood place, the defendant had a right to abandon all of the land rented to him on the Underwood place, and that if he did not abandon the whole place because of his eviction from a part, if he was evicted, that he could not be held liable for any portion of the rent due under said contract, but that he might treat said contract as a nullity; and that he had a right to retain that portion of said Steele place from which he had not been released without incurring any liability for rent of the Underwood place." The charge is misleading and erroneous. The latter part of it,—"that he had a right to retain that portion of said Steele place from which he had not been released, without incurring any liability for the rent of the Underwood place,"—has a tendency to mislead. The jury might have been misled to believe, that if he had retained the houses, garden, etc. on the Steele place, he would be released thereby from all liability for rent of the Underwood place, whereas, as we have held, the two leases and the liability of defendant under each, were distinct. That part of the charge which instructed, "that if he did not abandon the whole place, because of his eviction from a part, if he was evicted, that he could not be held for any portion of the rent under said contract, but that he might treat said contract as a null-

ity," was erroneous. Under the law, he could not so treat said contract, because of an eviction from a part of the premises, without abandoning the entire place. He could not retain the balance and dispute liability, since as we have held, "nothing less than an entire abandonment or surrender will operate to dissolve the tenancy, and a suspension or discharge of the whole rent." . The evidence for the plaintiff tends to show . that he was evicted from no part of the place, that he did not consent to surrender; and that for defendant, that he was evicted from a part without his consent, and on that account, he abandoned the whole.

The court in its oral charge, also, instructed the jury, "that they were not authorized to allow any interest to the plaintiff, and in no event, if they found for the plaintiff upon the evidence in the case, could they render a verdict for more than $100." In this, also, there was error. Even in the justice's court, the plaintiff would have been allowed to recover interest, certainly, if the recovery did not, including interest, amount to more than $100. It does not appear that the defendant pleaded in abatement in the circuit court, the want of jurisdiction in the justice, for that plaintiff claimed more than $100, the amount to which by law the jurisdiction of a justice is limited. When a cause is removed into the circuit court by appeal from a justice's court, and is there pending, it is, as we have long ago held, competent for the parties to treat it as if originating in that court; and if they do so, on defendant's failure to file a plea in abatement, a judgment may be there rendered for an amount exceeding $100.—*Bentley v. Wright* 3 Ala. 607; *Vaughan v. Robinson*, 20 Ala. 229; *S. & N. A. R. R. Co. v. Brown*, 53 Ala. 655; *R. & D. R. Co. v. Hutto*, 102 Ala. 575.

Charge 1 requested by plaintiff, was properly refused. It takes no account of the evidence for the defendant going to show that he was evicted from ten acres of the Underwood land, and that, thereupon, he abandoned the whole tract, as he had a right to do, if evicted of the ten acres of it, as claimed.

. 28c

From what has been said it will appear that charges 2 and 3 by plaintiff were properly refused. Charges 4, 5, and 6, are sought in argument to be justified alone on the ground, that the two contracts of lease, of the 11th of January and 18th of May, 1899, of the Steele and Underwood places, are to be construed as one contract, and on the same grounds, they, like charges 2 and 3 were properly refused, for the reasons urged to sustain them. Objection to their refusal on other grounds is not urged, but waived.

Charge 7 was properly refused. The proof tended to show that Johnson grass was cut from the land for which plaintiff would owe defendant; but it also tends to show, that defendant was given credit for it.

Charges 3, 5, 6, and 10, given for defendant, are the only ones insisted on in argument as being erroneous, and on the theory of defendant's evidence, they were properly given. The four acres and houses retained under the lease of the Steele place, were subject to be paid for, at $3.50 per acre, as therein provided, as by the lease of the Underwood place, all the remainder of the Steele place was surrendered.

Reversed and remanded.