## Chamberlain *v.* Godfrey's Administrator.

*Action by Lessee for Recovery of Rent paid in Advance.*

*Destruction of leased premises by fire; lessee's right to return of rent paid in advance.* —In the absence of an express stipulation to the contrary, a lessee cannot claim a *pro rata* return of the rent paid in advance, on account of a partial destruction by fire, during the term, of the leased buildings; and when such a stipulation is inserted in the lease, it is for his benefit, and is waived by him, if he continues in possession after the fire, using the remaining buildings for the purpose contemplated by the lease; nor is it necessary that the lessor, before he can claim that such stipulation has been waived, should have demanded the surrender of the premises.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JOHN ELLIOT.

This action was brought by Mrs. Cornelia Godfrey, as the administratix of the estate of her deceased husband, Abner M. Godfrey, against Francis H. Chamberlain, and was commenced on the 31st day of October, 1871. The complaint was for a breach of covenant, and was founded on a lease entered into between the defendant and the plaintiff's intestate, dated the 22d day of May, 1869, by which said defendant, acting by his agent, G. M. Parker, rented to said A. M. Godfrey, for the term of six months, commencing on the first day of June, 1869, the property known as the "*Point Clear Hotel.*" The stipulated rent was one thousand dollars, which was paid in advance. The property was to be used only "as a first class hotel;" and the lease contained this stipulation: "And it is agreed that, in case of the destruction by fire of the premises herein leased, before the first day of November, 1869, that the party of the first part shall refund to the party of the second part, at the rate of two hundred dollars per month, for the un-

[Chamberlain v. Godfrey's Administrator.]

expired term to November 1, 1869." The complaint alleged, that the leased premises were destroyed by fire on the 16th July, 1869, and that the defendant had failed and refused to refund any portion of the rent, as required by the stipulation above quoted. The defendant pleaded, " in short by consent," — 1st, performance ; 2d, " that said covenant has not been broken by defendant; " 3d, " that plaintiff's intestate, after the alleged destruction of the premises mentioned in the complaint, retained and held possession of said premises, and refused to surrender the same to said defendant, by reason whereof defendant was deprived of the use thereof, and prevented from selling and disposing of the same ; " 4th, " that said premises were not destroyed by fire ; " and issue was joined on all these pleas.

" On the trial," as the bill of exceptions states, the plaintiff read the lease in evidence, " and introduced a witness whose testimony tended to show, that the Point Clear Hotel property consisted of a large building, in which were the dining-room, parlor, office, and eighty or ninety sleeping rooms, and to which were attached, in the rear, the kitchen, pantry, and store-room ; that this was the main building of the place ; that there was, also, another building, twenty or thirty feet from the main building, containing about twenty-four sleeping rooms of an inferior quality ; also, another building, detached from the last mentioned fifteen or twenty feet, in which were the billiard-room, bar-room, and several rooms up stairs used for sleeping rooms, and in the rear of it a ten-pin alley, besides other cottages and buildings ; that all these buildings were used by the proprietor of the premises as a part of the hotel, and were under his control, and for the benefit of the guests of the hotel ; that on the night of the 16th July, 1869, the main building was totally destroyed by fire, together with the rooms attached, but no other buildings on the premises were either burned or injured ; and that the plaintiff's intestate, after the fire, kept possession of the premises, and, by himself and his guests, occupied the other buildings, and so kept possession, and used and occupied them as a hotel, and received and entertained guests, until near the close of the term named in the lease — that is, until about the middle or latter part of October, 1869. Witnesses introduced by the defendant testified to the same effect ; and one of them, the defendant's agent, testified that, in his opinion, the houses remaining after the fire were not sufficiently large and commodious to enable the proprietor to entertain as many guests as before, or to keep up a ' first class hotel ; ' that he made the lease to plaintiff's intestate as agent of the defendant, and continued his agent after the fire, until the end of the term ; that he did not exactly make a demand of the premises of plaintiff's

intestate, but informed him that he had an offer, and could sell the premises for five thousand dollars ; that said intestate, then and there, said he would take the premises at that price ; which was agreed to by said agent ; and this put an end to the sale to others, and said intestate continued in possession and occupation of the premises until near the end of the term, under this agreement or understanding, but did not consummate the sale ; whereby defendant lost the sale to others, and about $2,500.

" The court charged the jury, that if they believed, from the evidence, that notwithstanding plaintiff's intestate retained the possession of the premises, and used and occupied them as a hotel after the fire, this, of itself, was not a waiver of his right to the *pro rata* rent paid in advance, if the defendant, or his agent, did not demand them of him. To this charge the defendant excepted.

" One of the jurors asked the court, ' If no express demand for the possession of the premises was made by the defendant of the plaintiff's intestate after the fire, was the defendant liable ? ' To this inquiry the court responded to the whole jury, that he would be liable ; to which answer and instruction the defendant excepted."

The charges of the court to the jury are now assigned as error.

THOS. H. HERNDON, for appellant. — Leaving out of view the parol agreement to purchase, the case stands upon precisely the same principle as if the rent had not been paid in advance, and the lessor was suing to recover rent for the unexpired term after the fire. Against such a suit, the lessee would have no shadow of defence, but for the special clause by which he protected himself against such liability. Taylor on Landlord & Tenant, § 372 ; *Holtzapffel* v. *Baker*, 18 Vesey, 115 ; *Pym* v. *Blackburn*, 3 Vesey, 34 ; *McMillan* v. *Solomon*, 42 Ala. 363, and cases cited. The clause was inserted for his benefit. It was optional with him to insist on it, or to waive it. This right was secured to him by the lease, and the lessor could not control his election. If he desired to insist on it, it was his duty to surrender the premises, or at least offer to do so. By remaining in possession, and using the demised premises for the very purpose for which he rented them, he made his election, and waived the benefit of the special clause, which entitled him to be refunded if he had surrendered the premises. The charge of the court treats the stipulation in the lease as if it had been inserted for the benefit of the lessor, and, to avail himself of it, it was necessary for him to make an express demand.

D. P. BESTOR, *contra.* — The relation of landlord and tenant was dissolved by the fire. That was the event which terminated the relation, and entitled the lessee to a *pro rata* return of the rent, as provided in the lease ; and it was so treated by both parties. *Buschman* v. *Wilson,* 29 Maryland, 553 ; Taylor on Landlord & Tenant, § 502 ; 29 U. S. Digest, 411, § 29 ; 27 Ib. 396, § 1. After the termination of this relation, and after the conversation between the parties subsequent to the fire, the plaintiff continued in possession of the premises as purchaser, or under an agreement to purchase ; and this could not be construed into a waiver of his right to demand a return of the rent. To have this effect, the lessor should have repudiated the new agreement, and informed the lessee of the fact. This action on his part was necessary, to show that he still claimed the rights under the lease, and that the lessee must either give possession or pay full rent. If Godfrey had not paid the rent in advance, he certainly could not be held liable for rent after his contract to purchase, since he could not be both landlord and tenant. The lessor might, at most, have held the lessee liable, under a *quantum meruit,* for use and occupation after the fire, or set up this right under the plea of set-off or recoupment ; but this he did not do.

BRICKELL, J. — A lessee of premises destroyed, during the term, by inevitable accident, the violence of nature, or the act of a public enemy, has no relief against an express covenant or promise to pay rent, either at law or in equity, unless he protects himself by a stipulation in the lease, or the landlord covenants to rebuild. The reason of the rule, usually assigned, is, that the lessee by his own contract creates the charge upon himself, and, no fault being imputable to the landlord, he should be compelled to bear it, as he could, if he had chosen, have relieved himself by a stipulation for the cessation of rent in the event of such destruction. Considerations of public policy seem, also, to have entered into the adoption of the rule. Such destruction may result from the carelessness of the lessee, and it may not be possible for the lessor to offer evidence of it. Holding the tenant to liability for rent, removes temptation to negligence, and keeps alive the diligence he should observe in protecting and preserving the premises. 3 Kent, 603 ; Taylor's Landlord & Tenant, § 377. A limitation of this rule is, that the destruction must not be of the entire premises leased. There must be something of the subject-matter of the lease remaining. Its value may be diminished ; it may be incapable of rendering to the tenant the benefit he expected to derive from its use and occupation. The tenant is, nevertheless, bound to pay the rent, so long as the thing

demised is capable of holding under the lease — so long as the estate of the landlord, out of which the term is carved, remains. But, if the estate is gone, and the subject-matter or thing leased no longer exists, the liability of the tenant for rent ceases. For the rent is a certain profit, issuing out of lands and tenements corporeal, in compensation for their use and occupation. When the land or tenement ceases to exist, the rent, which issues out of, and is but an incident to it, of necessity must cease. Illustrations of this limitation, to which elementary writers and judicial decisions refer, are found in 3 Viner's Abr. 13, tit. "*Apportionment*," and are quoted at large in *McMillan* v. *Solomon*, 42 Ala. 356. The lease of rooms or apartments in a house, in a town or city, is another illustration of the limitation. If these, during the term, are totally destroyed, without fault on the part of the tenant, the destruction dissolves the tenancy, and the rent is apportioned. *McMillan* v. *Solomon, supra; Graves* v. *Berdan,* 29 Barb. 100; *Kerr* v. *Merchants' Exchange,* 3 Edw. Ch. 315; *Winton* v. *Cornish,* 5 Ohio, 477.

In this case, the rent was stipulated to be paid, and was paid, in advance. The destruction of the leased premises by fire, as it would not have absolved the tenant from liability for rent payable in the future, could not, in the absence of a stipulation in the lease, have entitled him to a restitution of the rent paid, or any part thereof. *Cross* v. *Button,* 4 Wisc. 468. The lease, however, contains this stipulation, " And it is agreed that, in case of the destruction by fire of the premises herein leased, before the first day of November, 1869, that the party of the first part shall refund to the party of the second part, at the rate of two hundred dollars per month, for the unexpired term to first of November, 1869." The premises were partially destroyed in July, 1869, and the destruction materially impaired their fitness for a hotel, the use for which they were leased. Of the buildings not destroyed, the lessee remained in undisturbed possession, and used and occupied them for the entertainment and accommodation of guests and visitors.

We are not required to determine whether there was such an injury by fire of the premises as would give rise to the right of the tenant to a return of the rent paid. This seems not to have been controverted on the trial in the court below. The stipulation in the lease does not contemplate the entire destruction of the premises, as the contingency on which the right to a return of the rent depends; nor yet would a slight or partial injury, capable of speedy repair, not rendering the premises untenantable, or unfit for the use for which they were leased, create the contingency. The injury must render the premises untenantable, and unfit for the uses of the lease. *Wall* v.

*Hinds*, 4 Gray, 256. If this is its extent, the right of the tenant to a return of the rent, under the stipulation in the lease, arises. This stipulation is for the benefit of the tenant. It confers a right, which, in its absence, the law would not raise. And the precise question this record presents is, whether the holding over by the tenant, after a destruction of the premises which would give rise to the right to a return of the rent, but not rendering them valueless, in the absence of an express demand of possession by the lessor, takes away or impairs the right?

In *Crommelin* v. *Theiss & Co.* 31 Ala. 412, it is held, that any interference by the landlord, depriving the tenant of the right of enjoyment of the premises to the full extent secured by the lease, would authorize the tenant to abandon the premises, and exonerate him from liability to pay the rent imposed by the contract. But if, after such interference, the tenant failed within a reasonable time to abandon possession, or did any act inconsistent with the right to abandon, he would thereby waive that right. The principle is, that he has two rights, inconsistent with each other, and the exercise of one is a waiver of the other. The interference of the landlord was, at the election of the tenant, a dissolution of the tenancy. If the tenancy is dissolved, the right of the tenant to occupy ceases. His subsequent possession, in the absence of all qualifying facts or circumstances, would be tortious. It would not be referred to the relation of landlord and tenant, for that was dissolved, which only could relieve it from the character of a trespass. Therefore, a continuance in possession by the tenant must be regarded as a waiver of the act of the landlord, which would, in the absence of such waiver, have dissolved the tenancy. It would be manifestly unjust, if the tenant could, after such interference, remain in possession, depriving the landlord of the use and occupation, and, when sought to be charged with the liabilities his tenancy imposes, exonerate himself because of such interference. He should act on such interference when it occurs, if he would found a right on it. Then he secures for himself all to which such interference entitles him, and produces no injury to others.

In the case under consideration, an injury to the premises, rendering them untenantable, and unfit for use as a hotel, is the contingency on which the right to a return of the rent depends. When that contingency happens, the tenancy is dissolved. The right of the landlord to rent, in retribution for the use and occupation of his premises, terminates. The right of the tenant to occupy, for which the rent paid, or to be paid, was compensation, ceases. The parties stand to each other, as to the occupancy of the premises, in no other relation than they would have borne if the lease had never been made.

[Chamberlain *v.* Godfrey's Administrator.]

The tenant does not accept the dissolution of the tenancy. He remains in possession of the premises, deriving all the profit they are capable of yielding. He applies the buildings not injured to the uses for which the entire premises were leased. He deprives the landlord of the use and occupation, and all the benefits to be derived from possession. He was a wrongdoer, or a tenant ; and we think he must be regarded as waiving, and as intending to waive, his right to dissolve the tenancy, and not as intending to convert himself into a trespasser. We say, the right of the tenant to dissolve the tenancy; for we think it was his right, and his right only, to treat it as dissolved. The stipulation in the lease was for his benefit only, as we have said, creating in him a right which the law would not raise. The landlord could not compel him to the acceptance of the right, instead of the other right given by the lease ; the occupation of the premises during the entire term.

A lessee, holding under a lease for a certain time at a fixed rent, and continuing to occupy after the expiration of the term, is presumed to occupy for another term, and under the stipulations and conditions of the lease. *Ames* v. *Schuessler*, 14 Ala. 600. The principle on which this rule proceeds, is of very general application. It is, that a personal relation, or a state of things, once established by proof, is presumed to continue, until the contrary is shown, or until facts are proved inconsistent with its continuance. The principle applies to this case. The relation of landlord and tenant is shown by the lease, which is determinable, at the election of the tenant, on the happening of a particular event. The event happens, but the tenant remains in possession, as if it had not happened, using and occupying the premises, as he could not lawfully use and occupy if he was not a tenant. The presumption must be, that the tenancy continues.

A forfeiture of the tenancy, by a breach of the conditions of the lease, is waived by the lessor, if he, with knowledge of the forfeiture, accepts rent subsequently accruing. A notice to quit, given the tenant by the landlord after its expiration, converts a subsequent holding by the tenant into an adverse possession, on which the landlord may maintain ejectment. If the landlord suffers the tenant to remain in possession, and accepts rent for the occupation subsequent to the notice, he waives the right to treat the tenant's possession as wrongful, and the relation of landlord and tenant is restored. On the same reasoning, we conclude, that if the premises leased were so materially injured by fire, that the tenant's right to a return of the rent would arise, yet he waives that right, by continuing to use and occupy the premises as if nothing had occurred to dissolve the tenancy. The waiver arises from the act of the

[Ashley's Administratrix *v.* Martin.]

tenant. No demand of possession by the landlord was necessary. The duty of electing to accept a dissolution, or a continuance of the tenancy, rested on the tenant.

The only error assigned is the charge of the court, that the lessee's remaining in possession of the premises after the fire, using and occupying them as a hotel, was not a waiver of his right to a return of the rent, under the stipulation in the lease, unless the lessor had demanded possession of the premises. This charge was erroneous, under the view we take of the case. What are the rights of the parties, if the subsequent possession of the lessee was not under the lease, and a continuance of the tenancy, but under a verbal contract of purchase, which he failed to consummate, is a question we cannot consider as the case is now presented.

The judgment is reversed, and the cause remanded.