## SNOW V. STATE.

. J. B. WOOD, Judge.

APPEAL from Saline Circuit Court.

1. SALOON: *What constitutes: Permitting minor to play pool in.*
   A place where cider, birch beer, ginger ale and like refreshments, are served after the manner of dram shops, is a "saloon," within the meaning of the act of February 21, 1887, which makes it a misdemeanor for the keeper of "any dram shop or saloon," to permit a minor to play therein at any game of "pool." To constitute such saloon it is not necessary that ardent spirits should be offered for sale, or that it should be a business requiring a license under the revenue laws.

STATEMENT.

The appellant was convicted on an indictment which charges, that, being the keeper of a saloon, he wilfully permitted Tilford Hockersmith, a minor, to play therein at a game of pool. The prosecution was under the act of February 21, 1887, section one of which is as follows:

"It shall be unlawful for any owner or keeper of any dram shop or saloon, or any employe of such owner or keeper, to permit minors to play in such dram shop or saloon, or any apartment thereof, at any game of cards, billiards, pool, or any other game, known by any other name, or without any name, for any bet or wager on such game or games, or for amusement without any bet or wager."

Section two provides that a violation of the act shall be punished by a fine of not less than twenty dollars nor more than fifty dollars. The following facts were shown by the evidence:

The defendant kept a house in the town of Benton, in which he sold ginger ale, soda pop, birch beer, native wine made from grapes and berries, lemonade, orangeade, blackberry-ade and cider. He also kept tobacco,

cigars, oysters, cheese, crackers, jellies, apples, oranges and lemons. The wine was kept and sold by the bottle for the manufacturer, and was not to the knowledge of the defendant durnk in the house. He sold the ginger-ale, birch beer and soda pop by the bottle and they were drunk from glasses which he kept in the house. The cider, orange-ade, blackberrry-ade and lemonade, were sold by the glass, and drunk in the house. None of these liquors were intoxicating except the wine. The floor of the room in which these articles were kept was uncarpeted, and it was also without chairs, benches or other means of comfortable sitting. The defendant owned a billiard table, cues, balls and pins, and kept them in the rear end of the same room. Persons were permitted to play billiards and pool there without charge, —the players arranging the balls and pins—and some-times congregated there in crowds numbering from six to twelve. The boys in and around the town frequently, assembled there to play pool and billiards. Generally the one who lost the game would "treat" the other players. In July, 1887, Tilford Hockersmith, a minor, fifteen years of age, played a game of pool on the defendant's table in the room mentioned, and in the presence of the defendant.

The court gave the jury, against the objection of the defendant, the following instruction:

If you find from the evidence that the defendant kept a house for the sale of cider, orange-ade, blackberry-ade, lemonade, soda pop, which he sold by the drink, and wine which he sold by the bottle, also kept cheese, crackers, oysters, tobacco, lemons, cigars and such like groceries for sale, also had a billiard and pool table in the same house on which all persons who desired were permitted to play at pleasure, and in which house per--

sons who wished to do so did congregate for the purpose of drinking and playing billiards or pool for pleasure, then you may find that he was a saloon keeper."

The defendant requested the following instruction which the court refused :

1. "Unless you find from the evidence that the defendant kept for sale, or sold alcoholic, intoxicating, ardent, malt, fermented or vinous liquor, other than native wine manufactured from grapes or berries, in Saline county, Arkansas, kept or sold by him as the agent of the manufacturer, you must acquit him."

The defendant also requested the following instructions :

2. "You are the judges in this case of whether the defendant was a saloon keeper or not, and you will determine whether he was such or not from all the evidence in the case. The word *"saloon"* and the term *"saloon keeper,"* disconnected from "dram shop" or a saloon where intoxicating liquors are sold by the drink, are not defined by our laws and are not subject to legal definition."

3. "The keeping for sale or selling wine manufactured in this state, in bottles as the agent of the manufacturer of it, does not constitute the keeper or seller a saloon keeper."

4. "Unless you believe from the evidence that the defendant was a saloon keeper at the time of the playing of the game of pool by the minor, as charged in the indictment, you should acquit him."

The court gave the third and fourth instructions, but refused to give the second as asked, and gave it after striking out all except the following :

"You are the judges in this case of whether the defendant was a saloon keeper or not, and you will deter-

mine whether he was such or not from all the evidence in the case."

A new trial was denied the defendant and he appealed.

*G. W. Murphy,* for appellant.

The act of February 21, 1887, page 19, in the light of previous legislation was intended to prevent minors from playing pool and other games, in a place where liquors are sold. It was directed at dram shops and saloons where ardent liquors are sold, and not to places such as the evidence shows the appellant kept. See *Mansf. Dig., secs.* 525–6, 1850, 4516, 4518, 5592, 5596.

The act should be construed with reference to previous legislation. 3 *Ark.,* 556; 4 *Id.,* 410; 5 *Id.,* 349.

This statute is penal and should be strictly construed. 6 *Ark.,* 131.

*Dan. W. Jones, Attorney General,* for appellee.

The act of February 21st, 1887, makes it a misdemeanor for the owner of a dram shop or saloon to allow a minor to play at a game of pool tor a wager or for amusement in his dram shop or saloon. *Acts of* 1887, *p.* 19.

The legislature uses the two words "dram shop" and "saloon." If they mean the same, then they have been guilty of the error of tautology, which we can hardly suppose an intelligent body like the Arkansas legislature to be guilty of.

Dram is defined by Worcester to be "such a quantity of spirituous liquor as is usually drunk at once."

And "saloon," "a place of refreshment."

The legislature is supposed to have used these two words with full comprehension of the meaning; and to

have used them in their ordinary and lexicographic sense. If so, the court's charge was correct.

OPINION.

COCKRILL, C. J.   Permitting a minor to play pool in a "dram shop or saloon" is a misdemeanor by virtue of the act of February 21st, 1887.

There is nothing in the act, nor in the evil it was intended to prevent, to indicate that the words "dram shop" and "saloon" are used as synonymous in meaning. Neither in accurate signification nor by common acceptation, are they identical in meaning. A dram shop or place where spirituous liquor is sold by the drink, is commonly called a saloon, but the latter word has a much broader meaning. To constitute a saloon, it is not necessary that ardent spirits should be offered for sale, or that it should be a business requiring a license under the revenue laws of the state. *Kitson v. Mayor of Ann Arbor,* 26 *Mich.,* 325; *Goozen v. Phillips,* 49 *Ib.,* 7; *State v. Mansker,* 36 *Tex.,* 364.

A place where cider, birch beer, ginger ale and like refreshments are served after the manner of dram shops, as the proof shows was done in this case, is a saloon within the letter and spirit of the prohibition of this statute. The influence of the company which is supposed to frequent such resorts, upon the morals of youths, is what the legislature sought to avert by this act, and the language used embraces the saloon in the prohibitory as well as the licensed liquor districts.

The court's charge was not unfavorable to the appellant, and the judgment is affirmed.