# O'Byrne v. Henley, *et al.*

### *Action on Rent Contract.*

(Decided May 20, 1909.   Rehearing denied June 30, 1909.
50 South. 83.)

*Landlord and Tenant; Liability for Rent; Saloon.*—Where premises are leased for saloon purposes at a time when it was lawful to sell intoxicants and the premises are used by a lessee as a saloon for the sale of intoxicants, soft drinks, etc., the passing of a prohibition law prohibiting the sale of intoxicants does not have the effect to release the lessee from liability for future rent, as the business is not totally destroyed, since the use of the word saloon in the lease, while including the sale of intoxicants does not exclude the sale of other things, and the business is not totally destroyed.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by John C. Henley and others against T. W. O'Byrne for the rent of a building leased for saloon purposes which accrued after the passage and going into effect of the prohibition law. Judgment for plaintiff and defendants appeal. Affirmed.

POWELL & BLACKBURN, for appellant.—The uses and purposes for which the premises were rented were wholly and totally destroyed by legislative enactment, and as completely as if the premises had been totally destroyed by fire. The rule is that where the performance be-

[O'Byrne v. Henley, et al.]

comes impossible subsequent to the making of the contract the promisor is not thereby discharged.—9 Cyc. 627. This rule has its exception and these exceptions are where the performance becomes impossible by law, either by reason of a change in the law or by some action by or under the authority of the government.—9 Cyc. 629-30; *Wood v. Ia. B. & L. Assn.*, 102 N. W. 410; *Am. Mer. Ex. v. Blount*, 66 Atl. 212. The authority which confers upon one body the power of legislation authorizes its successors to change, alter or annul existing laws. And this is especially true in reference to the whiskey traffic.—2 L. R. A. 384; 29 L. Ed. 636; 98 N. W. 660; 76 Pa. St. 506; 3 Mich. 330. A contract is invalidated by the subsequent enactment of police regulation which renders its performance illegal as to one of the parties. —12 L. R. A. 652; 30 Am. St. Rep. 201; 115 Mass. 152. Attention is directed to a recent case in Georgia where the contention of appellant was upheld under very similar facts.—*Potts-Thompson Liq. Co. v. Goodrum Tobacco Co.*, in MS.

R. B. SMYER, for appellee.—The lease was not terminated by the action of the legislature in prohibiting the sale of intoxicants enacted subsequent to the execution of the lease.—3rd Supp. A. & E. Ency. of Law, 965; 30 Atl. 966; 88 S. W. 197; Ib. 368; 2 L. R. A. (N. S.) 973; 31 N. Y. Supp. 818; 27 N. Y. Supp. 986. The validity of a contract must be determined by the statutes in force at the time of its execution.—*May v. Williams*, 27 Ala. 267. In the particular case in hand see the following authorities.—*Chamberlain v. Godfrey*, 50 Ala. 530; *Warren v. Wagner*, 75 Ala. 188; *Cook v. Anderson*, 85 Ala. 99; *Phillips v. Whitley*, 109 Ala. 645.

MAYFIELD, J.—There is but one material question raised by this appeal, which is this: Did the prohibition

law in this state ex proprio vigore terminate leases of premises which were let only for saloon purposes?. If it did, the judgment for plaintiff below is erroneous and must be reversed. If it did not, the judgment was correct and must be affirmed.

The rule of the common law was that the destruction of the leased premises during the term by fire, inevitable accident, the violence of nature, the act of a public enemy, did not relieve the tenant from an express covenant to pay rent, unless it was stipulated in the lease that there should be a cessation of the rent in such case, or unless the lessor had covenanted to rebuild in such case. —*Chamberlain v. Godfrey's Adm'r.,* 50 Ala. 530; *Cook v. Anderson,* 85 Ala. 99, 4 South. 713; Taylor on Landlord & Tenant, § 377; 3 Kent, 603. A limitation or exception to this rule is that, if the destruction of the lease or premises is complete—nothing remaining, the subject-matter or thing leased no longer existing—then the liability of the tenant for rent ceases. This because rent is a profit issuing out of the lands or tenements as compensation for the use or occupation. Hence, if the principal is gone, the interest or incident cannot continue to exist. To illustrate: If a farm is leased, and the buildings are during the term destroyed by fire, the tenant is still liable for rent; but if a room only of that house had been rented, or one story only, and the house was destroyed completely, the tenant would not thereafter be liable for rent. If the room or story rented was only partially destroyed or injured, however, the rule would be different.—*McMillan v. Solomon,* 42 Ala. 356, 94 Am. Dec. 654; *Chamberlain v. Godfrey's Adm'r,* 50 Ala. 530. An eviction of the tenant by the landlord, or any interference by the latter which deprives the former of the right of enjoyment of the premises to the full extent of the lease, will authorize the tenant to abandon

the premises, and will exonerate him from further liability for rent.—*Crommelin v. Theiss,* 31 Ala. 412, 70 Am. Dec. 499; *Chamberlain v. Godfrey's Adm'r, Supra.* But the act of a third person which impairs the usefulness of the premises but which does not amount to an eviction by the landlord or paramount title, or to a breach of his covenants, or where the premises are repaired or removed by public authority, there is no eviction by the landlord which will exonerate the tenant from the payment of rent, in the absence of a contract to that effect.—24 Cyc. pp. 1132, 1133.

Some of the courts of the United States have held that there is no limitation or exception to the rule that the tenant remains liable for rent notwithstanding there is an entire destruction of the premises and of the lease, even where only a room, a story, or a certain apartment is let, which carries no interest in the land itself.— *Helburn v. Mofford,* 7 Bush (Ky.) 169. Some of the Western states, however, have adopted an intermediate rule of prorating or apportioning the loss between the vendor and the vendee by abating a part of the contract price. In the case of *Wattles v. South Omaha Co.,* 50 Neb. 251, 69 N. W. 785, 36 L. R. A. 424, 61 Am. St. Rep. 554, the majority of the court hold that where a substantial part of the leased premises is destroyed pending the lease, without fault on the part of the lessee, he is entitled to an apportionment of the rent contract to be paid which accrues thereafter, in the absence of an express assumption by him of the risk, and that the common-law rule that the tenant in such case was liable for the contract price after partial destruction of the premises did not prevail in that state. The majority opinion in the above case held that the common-law rule of making the tenant bear the entire loss was a harsh and technical one; that since it was first announced the condi-

tions of the race had changed, that its conscience and intellect had quickened, and, however, meritorious the rule originally, that it was now opposed by the genius and spirit of this age, and in conflict with its judgment and conscience. The rule of thus apportioning the loss was first announced by Justice Brewer in the case of *Whitaker v. Hawley,* 25 Kan. 674, 37 Am. Rep. 277, and the Nebraska court approved the rule announced by Justice Brewer, "because it was a magnificent protest against slavish devotion to antiquated rules, and because it breathed the spirit of humanity and equity, and was based on a thought of the nineteenth century." In a dissenting opinion in this *Nebraska Case, supra,* written by Justice Irvine and concurred in by Chief Justice Post and Justice Ryan, the above proposition announced by the majority opinion is answered thus: "It is not for courts to abrogate or reform contracts because of apparent inequity or injustice in the provisions. If the nineteenth century has advanced so far as to require the desregard of established principles merely because they are antiquated, this modern enlightenment must certainly have extended so far as to justify a presumption that the parties to a contract have sufficient intelligence to anticipate probable disaster and provide therefor if they desire. * * * Rules settled by a long and uniform course of judicial decision should not be lightly disregarded." Mr. Freeman, the great annotator and text-writer, commenting on this rule of apportioning the loss, says the rule is asserted "with much charity and some logic."

If we were disposed to follow the Western rule of apportioning the loss (which we do not decide or consider), we could not do so in this case, because there was no attempt so to do in the lower court, and there is absolutely no pleading or evidence on which to base

such a judgment. Where the question or rule is regulated by statute—which is the case in some states—or where it is provided for in the lease, then, of course, the statute or contract will control. In this state we have no statute regulating this subject, and the contract of lease does not attempt to provide against a law prohibiting the sale of intoxicants. The contract or lease in question leases the premises to appellee for two years from October 1, 1907, "for occupation by him as a saloon and not otherwise." It would seem that a destruction of the business or trade which, by the contract, was to be carried on in the premises, should be analogous to a destruction of the premises themselves. While, of course, they may not be and are not strictly analogous in all respects, yet we think that they are so in so far as is necessary to a decision of the questions involved on this appeal.

It is therefore necessary for us to inquire: Was the business for which the premises were leased wholly or partially destroyed? This will depend upon the construction given to the word "saloon," as used in the lease. Webster defines "saloon," as follows: "(1) A spacious and elegant apartment for the reception of company or for works of art; a hall of reception, especially a hall for public entertainments or amusements; a large public room or parlor; as the saloon of a steam boat. (2) Popularly, a public room for specific uses; especially, a barroom or grogshop; as a drinking saloon; an eating saloon; a dancing saloon." Mr. March defines it as "an apartment or hall devoted to some specific use; a place where liquor is retailed." The word as used in the lease in question has, we think, acquired a more particular and restricted meaning than it had when Mr. Webster defined it. It is now often used as synonymous with "barroom," "grogshop," or

"dramshop." We think it was used in their contract to include the sale of intoxicants liquors, but not to ex-clude the sale of every thing except intoxicating li-quors. The word appears to have been construed dif-ferently were used in municipal ordinances, and char-ters, acts of the Legislature, etc., from the interpreta-tion accorded it where used in contracts, leases, etc.—7 Words & Phrases. It has been held by the Supreme Courts of Illinois and Michigan that it may or may not mean a place for the sale of intoxicating liquors; and hence where premises were by the terms of the lease to be occupied as a saloon, and for no other purpose whatever, the word "saloon" in such lease will not be understood as matter of law to mean a place where in-toxicating liquors only were to be sold, and not a place for the sale of soda water, etc.—*Brewer Co. v. Boddie,* 181 Ill. 622, 55 N. E. 49. It has been held, also, to in-clude a place to which persons can go to get refresh-ments, to eat or drink, and to include a place where gin-ger ale, cider, etc., are served, and that it does not nec-essarily import a place where intoxicating drinks alone are sold.—*Kitson v. Ann Arbor,* 26 Mich. 325; *State v. Mansker,* 36 Tex. 364; *Snow v. State,* 50 Ark. 557, 9 S. W. 306; *Goozen v. Phillips,* 49 Mich. 7 12 N. W. 889.

Our construction of the word "saloon," as used in this lease, is borne out by the evidence of the parties in this particular case. The lessee testified that he used the premises for a saloon under the lease from Oc-tober 1, 1907, until the prohibition law went into effect, January 1, 1908; that the word "saloon," as used in the lease, meant a place for the sale of intoxicating drinks and beverages; that he also sold and dispensed to the public in said premises under said lease other drinks, such as soda water, lemonade, and soft drinks, and ci-gars, cigarrettes, and tobacco. This use to which the

[O'Byrne v. Henley, et al.]

lessee put the premises seems to have been known to the landlord, and no objection was made by him; hence we think that the business he is shown to have carried on was the business which the lease contemplated. It is conceded that the sale or dispensing of intoxicating liquors or beverages was prohibited in Birmingham, Ala. (the situs of this property), on and after January 1, 1908, during the life of this lease. It is also conceded that the rent was paid up to this date, and that thereafter the tenant refused to pay rent and offered to surrender the premises to the landlord, which offer the landlord declined, insisting upon payment, but proposed to release the lessee from the provision that the premises should be used only for a saloon, and allow him to use the premises for any other legitimate purpose not more injurious than would be the liquor business, and not constituting a nuisance to other tenants in the same building. The lessee declined this offer, saying that it was a modification of the first lease, to which he did not consent; that the prohibition law terminated the lease and dissolved the relation of landlord and tenant, and released him from further liability for rent. This was evidently a partial, and not a total, destruction of the business for which the premises were leased. If we apply to the destruction of the business the same rule that we invoke as to the destruction of the premises—and we think this would be just and proper in the case at bar— it follows that the tenant was not discharged from liability by reason of the prohibition law. He could in law and in fact have continued to use the premises as a saloon though he could not have sold intoxicating drinks or beverages. His business might not, and, as it was shown by the evidence, would not, have continued to be as profitable as if he could sell intoxicants; nevertheless he could have continued to sell soft drinks, ci-

gars, cigarrettes, tobacco, etc., as he did before. That his business would not be as good after as before the law went into effect was no more the fault of the landlord than it was of the tenant. The contract of lease not having provided against such a contingency, which both parties knew could happen, as it provided against other contingencies, we must leave the liability and loss, if any, where the law leave it, to wit, upon the tenant.

We are referred by counsel for appellant to a recent decision said to have been rendered by some court of Georgia upon this idenntical question. We have not been furnished with and are not able to see what even purports to be a copy of that decision, but only what purports to be an excerpt from the opinion which may be said to indicate the reverse of what we hold in this case. It may be that the statutes of Georgia regulate or provide for such conditions, or it may be that the contract or facts of that case differentiate it from this case. This, of course, we cannot know without an inspection or examination of the opinion and decision in full. But if it be different from and holds the converse of this, we would not be willing to follow it or apply the rule in this state while our law remains as it now is. The nearest cases in point which we have been able to find where the question was not regulated by statute are decisions from the state of Texas, and they support the rule as announced above in so far as they are in point.— *Houston Ice Co. v. Keenan*, 99 Tex. 79, 88 S. W. 197; *San Antonio Co. v. Brents,* 39 Tex. Civ. App. 443, 88 S. W. 368. The rule is, of course, different where the parties contract to carry on a business which is unlawful at the time the contract is made, or where they contract to do an unlawful act. So long as the contract is executory, it cannot be enforced by either. The contract made in the case at bar was not unlawful in toto

[O'Byrne v. Henley, et al.]

now because it might authorize the selling of intoxicants as a part of the business of a saloon, and the contract will now, by letter and spirit, authorize the tenant to sell soft drinks, cigars, cigarettes, tobacco, or anything sold or dispensed in a saloon, not intoxicating. The landlord certainly could not have terminated this lease, because the tenant would not or could not sell intoxicants. There was nothing in the lease which required this, though it did allow it. If the landlord was still bound after the law went into effect (and we think he was), then the tenant also ought to be bound. Both parties ought to be bound by the law, or neither. The mere fact that the law might cause the tenant to suffer a loss when without it he would have made a profit is no more reason to annul the contract on that account, or to allow the tenant to avoid it, than the passage of a law which increased the tenants's profits, and thereby made the lease more valuable, would authorize the landlord to annul the lease, and require a new one under the new law.

On the case as shown by this record, the plaintiff was clearly entitled to recover the judgment rendered. We can find no error in the record, and judgment must be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., concur.