In re BRADLEY.

(District Court, N. D. Alabama, S. D.   August 18, 1915.)

No. 14121.

1. LANDLORD AND TENANT ⊂⊃105, 199½—LIABILITY FOR RENT—"SALOON."

A lease of premises, made when it was lawful to sell intoxicants, to be occupied and used only for the purposes of a saloon, which were in fact used for the sale of nonintoxicants, cigars, and tobacco, was not terminated by a subsequent law prohibiting the sale of intoxicants, as the word "saloon" includes a place for the sale of nonintoxicants as well as intoxicants; and, as the destruction of the leased premises was partial and not total, there was no remission or apportionment of rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 329, 330, 761; Dec. Dig. ⊂⊃105, 199½.

For other definitions, see Words and Phrases, First and Second Series, Saloon.]

2. COURTS ⊂⊃366—UNITED STATES COURTS—DECISIONS OF STATE COURTS.

Where a lease of premises for use only as a saloon was executed after decisions of the Alabama court of last resort that the prohibition law did not forbid the sale of nonintoxicants upon such premises and that their sale did not release the tenant from rent, such decisions should be followed by the United States District Court in bankruptcy in determining the tenant's liability for rent.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ⊂⊃366.]

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. ATTACHMENT ⌐⇒161—LEVY—POSSESSION OF PREMISES.

A sheriff levying upon personal property has the right to the temporary possession of the premises long enough for him, in the exercise of reasonable diligence, to inventory and remove for storage the property levied upon.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 457–459; Dec. Dig. ⌐⇒161.]

4. LANDLORD AND TENANT ⌐⇒190—EVICTION—LEVY OF ATTACHMENT.

An attachment and levy in aid of the collection of rent under which the sheriff, after the filing of a petition in bankruptcy against the tenant, without objection by the tenant and with the acquiescence of the landlord's agent, locked the storehouse in which the tenant's stock of goods was kept, and surrendered possession to the receiver in bankruptcy appointed the following day, did not amount to an eviction, so as to defeat a claim for rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 765–769; Dec. Dig. ⌐⇒190.]

5. LANDLORD AND TENANT ⌐⇒109—RENT—SURRENDER OF PREMISES.

The tenant's surrender of the key of premises on demand of a sheriff attaching his personal property could not be construed as a surrender of the premises, nor could the sheriff's acceptance of the key in the presence of the landlord's agent be construed as an acceptance of a surrender.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 350–360, 363–365, 368–371; Dec. Dig. ⌐⇒109.]

In Bankruptcy. In the matter of Ben R. Bradley, bankrupt. Petition of Mrs. K. D. Wilcox, landlord, to review order of referee disallowing lien for rent. Petition granted, and lien allowed.

Needham Graham, Jr., of Birmingham, Ala., for petitioner.
S. B. Stern, of Birmingham, Ala., for trustee in bankruptcy.

GRUBB, District Judge. This is a petition to review the order of the referee, disallowing the lien of the petitioner, Mrs. K. D. Wilcox, for rent of the premises occupied by the bankrupt. It is conceded by the trustee that the petitioner would be entitled to the lien but for two reasons: In the first place, it is contended that the lease contract was avoided by the going into effect of the Alabama prohibition law, which prevented the operation of saloons in Alabama after June 30, 1915; the lease providing that the leased premises should be occupied and used only for the purpose of a saloon. In the second place, it is contended that there was an eviction by the landlord of the tenant, through an attachment which the landlord caused to be levied on the personal property of the tenant situated on the leased premises, to satisfy the landlord's lien for rent.

[1, 2] First. The lease contained a provision that the premises should be used by the tenant as a saloon and for no other purpose. The use of them for the sale of intoxicating liquors was prohibited by the Alabama prohibition law, which went into effect July 1, 1915. The contention is that this had the effect to destroy the entire subject-matter of the lease, since the only purpose for which the premises could be used, as limited by the terms of the lease itself, was for the sale of intoxicating liquors. Whether this contention is correct depends upon the meaning to be given the word "saloon" as used in the lease. The

⌐⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tenant's contention is that this word, as used in the lease, is confined to a place where intoxicating liquors are offered for sale. The landlord's contention, on the other hand, is that the word "saloon" means a place where nonintoxicating liquors, as well as intoxicating liquors, are sold, together with cigars, tobacco, and cigarettes. If the word "saloon" applies only to a place where intoxicating liquors are sold, inasmuch as such a place could not have been legally operated after June 30, 1915, and inasmuch as the premises could have been, consistently with the terms of the lease, used by the tenant for no other purpose, they could not have been used by him at all, and hence it is argued that the entire subject-matter of the lease was thereby destroyed. On the other hand, if the word "saloon" applied as well to a place where nonintoxicants were sold, as to one where intoxicants were sold, then there would be, at most, but a partial destruction of the subject-matter of the lease, which would not excuse the payment of rent. It is conceded that the tenant in fact used the premises for the sale of nonintoxicating drinks and cigars and tobacco while he was in possession.

The Supreme Court of Alabama, in the case of O'Byrne v. Henley, 161 Ala. 620, 50 South. 83, 23 L. R. A. (N. S.) 496, has decided that the word "saloon" includes a place for the sale of nonintoxicants as well as intoxicants, and that a lease, in the terms of the one in this case, was binding on the tenant after the prohibition of the sale of intoxicating liquors took effect in Alabama. The case of Griel Bros. Co. v. Mabson, 179 Ala. 444, 60 South. 876, 43 L. R. A. (N. S.) 664, while giving a different meaning to the word "barroom," reaffirms the construction given the word "saloon" in the former case.

In view of the fact that the question is one involving the tenure and right of possession to real estate, and a local one, the decision of the court of last resort of Alabama should be followed by this court, especially as the lease in this case was executed after the decision of the Supreme Court of Alabama in the case of O'Byrne v. Henley, and very probably in reliance upon it. Abraham v. Casey, 179 U. S. 210, 21 Sup. Ct. 88, 45 L. Ed. 156; Clarke v. Clarke, 178 U. S. 186, 20 Sup. Ct. 873, 44 L. Ed. 1028; Old Colony Trust Co. v. City of Omaha, 230 U. S. 100, 33 Sup. Ct. 967, 57 L. Ed. 1410; Brown Forman Co. v. Kentucky, 217 U. S. 563, 30 Sup. Ct. 578, 54 L. Ed. 883.

The law of Alabama is also equally well settled that, where the destruction of the leased premises is partial and not total, there is no remission or apportionment of rent because of such partial destruction, unless the lease itself so stipulated. McMillan v. Solomon, 42 Ala. 356, 94 Am. Dec. 654; Chamberlain v. Godfrey, 50 Ala. 530; Warren v. Wagner, 75 Ala. 188, 51 Am. Rep. 446; Cook v. Anderson, 85 Ala. 99, 4 South. 713. The intimation of the court in the opinion in the case of O'Byrne v. Henley, as to a possible right of the tenant to an apportionment of the rent obligation in such a case, in the face of the settled rule in Alabama to the contrary, would seem unwarranted. The tenant is liable for the stipulated rental in full or for none, under the Alabama decisions cited.

[3, 4] Second. This leaves for solution the inquiry as to whether there was an eviction of the tenant by the landlord, through the instru-

mentality of an attachment, which the landlord caused to be levied upon the personal property of the tenant, situated upon the rented premises. The evidence tends to show that the bankrupt advised the agent of the landlord, before the attachment was issued and before bankruptcy intervened, to take steps to secure and collect his rent. The petition in bankruptcy was filed on the day preceding the suing out and levying of the attachment. A receiver in bankruptcy was first appointed after the sheriff had levied the attachment. It is conceded that the mere exercise of the landlord's undoubted right to levy an attachment to secure and collect past-due rent would be no indication of a purpose and intent to evict his tenant. In this case the sheriff executed the attachment by locking up the storehouse in which was located the personal property levied upon. The bankrupt, without objection, turned the key over to the sheriff on his demand, and all persons then in the saloon left with the sheriff, when the premises were by him locked up. The landlord's agent was in the saloon at and before the time the levy was made and the saloon closed, and made no objection to the manner of the levy. If the acts of the sheriff, even though they were approved or acquiesced in by the agent of the landlord, did not constitute an eviction of the tenant, then the other questions presented need not be decided. The sheriff surrendered possession of the premises the day succeeding the day of the levy to the receiver in bankruptcy.

Without passing upon the right of a sheriff to permanently close premises upon which is situated personal property upon which he has levied, it seems reasonable that he should have the right to the temporary possession of the premises, long enough for him in the exercise of reasonable diligence to inventory and remove for storage the property levied upon. This is the effect of the cases of Daniels v. Logan, 47 Iowa, 395, and of Wolf v. Ranck, 161 Iowa, 1, 141 N. W. 442.

In this case, all of the personal property on the premises was levied upon, so that the premises could not have been longer used by the bankrupt for the conduct of his business, since his entire stock was in the possession of the sheriff. If the sheriff had placed a bailee in possession of the personal property, as he had the undoubted right to do, the result would have been exactly the same to the tenant. In this case, the tenant was foreclosed from continuing business, even before the levy, by the filing of the petition in bankruptcy. There is no evidence of any declaration of the landlord or her agent, from which it could be inferred that the purpose of the attachment was other than the collection of the rent. Indeed, it seems quite clear that there was no other purpose on her part than to secure her rent in response to the invitation of the tenant to do so. Nor did the sheriff, while the agent was present, do anything inconsistent with a purpose merely to take possession of the personal property on the premises against which the levy was directed. At most, it can only be said that he selected a method of retaining custody of the property levied upon that was irregular, but which evinced no intent either upon his part or that of the agent to close up the premises for any other purpose than to keep safely the goods levied upon. Nothing was done by the sheriff that is not reasonably referable to a custody of the goods levied upon, and for this reason

no inference can be drawn that there was an intent by what was done to oust the tenant. His acts might constitute a trespass, but could not amount to an eviction.

[5] The fact that the tenant surrendered the key to the sheriff on his demand, conceding that it amounted to an abandonment of the premises, would only be significant, under the Alabama decisions, in the event that the acts of the sheriff, done with the acquiescence of the agent, amounted to a partial eviction of the tenant. The delivery of the key to the sheriff by the bankrupt was not done with the intent to surrender his possession of the premises as tenant to the landlord, but in response to the demand of the sheriff, made in pursuance of the writ of attachment. It cannot therefore be construed as a surrender, nor can the acceptance of the key by the sheriff, in the presence of the agent of the landlord, be construed as an acceptance of a surrender.

The petition for review is granted, and an order will be here made establishing the lien of the petitioner upon the fixtures of the bankrupt (or the proceeds of their sale) that were located on the leased premises during the term.